Montes de Oca, Demandante y Apelante, *v.* Báez et al., Demandados, y Sucesión Gómez, Opositores y Apelada.

Apelación procedente de la Corte de Distrito de Mayagüez en causa sobre cancelación de hipoteca.

No. 1398.—Resuelto en abril 14, 1916.

Ejecución de Hipoteca—Cobro de Créditos Hipotecarios—Procedimiento Sumario Hipotecario—Vía de Apremio—Venta de Bienes Hipotecados.—Con arreglo a la ley y a la jurisprudencia hoy vigente, el cobro de un crédito hipotecario puede perseguirse por el procedimiento sumario de la Ley Hipotecaria y su Reglamento, o con sujeción a los preceptos del Código de Enjuiciamiento Civil, debiendo regularse en uno y otro caso por la ley aprobada en 9 de marzo de 1905, la vía de apremio o la venta de los bienes hipotecados.

Ejecución de Sentencia—Preceptos de la Ley de Enjuiciamiento Civil Antigua—Orden General 118.—La Ley de Enjuiciamiento Civil que comenzó a regir en esta isla el 1º. de enero de 1886, en la parte relativa a ejecución de sentencias, no fué derogada por la Orden General 118 de agosto 15, 1899, sino que estuvo en vigor hasta que fué sustituída por el código actual de 1º. de julio de 1904.

Ejecución de Hipoteca—Segundos Acreedores Hipotecarios—Procedimiento de Apremio—Acreedores Hipotecarios Preferentes—Subasta.—Con sujeción a la antigua Ley de Enjuiciamiento Civil y a la Ley Hipotecaria, los segundos y siguientes acreedores hipotecarios eran notificados del procedimiento de apremio seguido para el cobro del crédito del acreedor hipotecario preferente, y esa notificación debe llevarse a cabo en el procedimiento sumarísimo actualmente vigente, según disponen los artículos 171 y 172 del Reglamento para la ejecución de la Ley Hipotecaria, para que puedan intervenir en la subasta. Si no intervinieren, no pueden quejarse de sufrir agravio por la aplicación del artículo 125 de la Ley Hipotecaria.

Id.—Ley Relativa a las Sentencias y Manera de Satisfacerlas—Segundos Acreedores Hipotecarios—Notificación Previa de la Subasta—Cancelación de Hipoteca—Debido Procedimiento de Ley.—Aun cuando la ley de 9 de marzo de 1905 relativa a las sentencias y manera de satisfacerlas nada dispone con relación a los segundos y posteriores acreedores hipotecarios, si se sigue el procedimiento ordinario o común para el cobro de un crédito hipotecario, su silencio no autoriza que sin haber tenido ellos noticia previa de la subasta, se dé cumplimiento con respecto de los mismos al artículo 125 de la Ley Hipotecaria, por tener ellos un derecho real sobre la finca que se va a enajenar y convenirles que se obtenga el mayor precio en la venta. La noticia previa es indispensable para que la cancelación se lleve a efecto mediante debido procedimiento de ley.

Id.—Notificación Previa de la Subasta—Segundos Acreedores Hipotecarios —
Cancelación de Hipoteca.—Cuando la demanda se dirige únicamente contra
el deudor, la notificación previa de la subasta a los segundos y posteriores
acreedores hipotecarios es bastante para la cancelación de las hipotecas pos-
teriores. Se interpreta el artículo 125 de la Ley Hipotecaria en armonía con
los 171 y 152 del Reglamento, y se da aplicación al artículo 36 del Código
de Enjuiciamiento Civil.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Pascasio Fajardo Martínez.*

Abogado de la apelada: *Sr. José Sabater.*

El Juez Presidente Sr. Hernández, emitió la opinión del tribunal.

Por escritura pública otorgada en 15 de febrero del año 1892, Ramón y Osvaldo Báez constituyeron hipoteca a favor de Emilio Gómez y Martínez sobre finca urbana de la propiedad de aquéllos, para garantir cierto crédito a favor de Gómez y Martínez cuya hipoteca fué debidamente inscrita en el Registro de la Propiedad de Mayagüez.

Por escritura posterior de 1º. de septiembre de 1893, también inscrita en el mencionado registro, los citados Báez constituyeron sobre la misma finca otra hipoteca a favor de Rosa Báez y Méndez, para garantir otro crédito por valor de $8,000, y comparecido en esa escritura Emilio Gómez y Martínez postergó a favor de Rosa Báez, su derecho de primer acreedor hipotecario.

La Rosa Báez cedió su crédito a favor de Teresa Camoín Báez por escritura de 19 de junio de 1893, y esa señora hizo igual cesión, a favor de Enrique Montes de Oca por escritura de 20 de julio de 1909, ambos documentos también inscritos en el registro.

Enrique Montes de Oca en 9 de agosto de 1909, entabló demanda ante la Corte de Distrito de Mayagüez contra Ramón y Osvaldo Báez para el cobro del crédito hipotecario que le había sido cedido por Rosa Báez, ajustándose al procedimiento ordinario establecido por el Código de Enjuiciamiento Civil, y en ese procedimiento recayó sentencia en 30 de octubre del mismo año por la que los demandados fueron con-

denados a pagar la suma reclamada, intereses y costas del pleito.

Expedida orden al márshal para la ejecución de la sentencia, fué subastada la finca hipotecada en 24 de diciembre de 1909, previa la publicación de edictos, y a la subasta concurrieron como licitadores únicamente el demandante Enrique Montes de Oca y Miguel Salgado, de los cuales el primero ofreció $1,000 por dos terceras partes de la propiedad, y el segundo $500 por la otra tercera parte, habiendo sido adjudicada la finca a dichos postores Montes y Salgado, en las partes proporcionales indicadas.

Los hechos expuestos fueron alegados por la representación de Montes de Oca en moción que el 14 de agosto de 1915 presentó a la corte de Mayagüez con súplica de que se expidiera mandamiento al registrador de la propiedad para que cancelara la inscripción de la hipoteca a que se refiere la escritura de 15 de febrero de 1892, según procedía, en cumplimiento de la ley No. 31 de 1912, para enmendar el artículo 125 de la Ley Hipotecaria.

La Sucesión de Emilio Gómez se opuso a la cancelación solicitada, y la corte la declaró sin lugar en octubre 1 de 1915, por estimar que no era de aplicación al caso el artículo 125 de la Ley Hipotecaria, contra cuya orden interpuso Montes de Oca recurso de apelación para ante esta Corte Suprema.

Opinamos con la corte inferior que no es aplicable al caso el artículo 125 de la Ley Hipotecaria, cuya infracción invoca la parte apelante como fundamento del recurso. El artículo 125 de la Ley Hipotecaria, en su apartado 2º., reproducido literalmente en la Ley No. 31 de 1912, dice así:

"En los casos de que sobre una o varias fincas graviten créditos hipotecarios de varios acreedores y lleguen a venderse o adjudicarse para el pago al primer acreedor, en términos de que el valor de lo vendido o adjudicado o no iguale o no supere al crédito hipotecario que se realice, los créditos restantes se entenderán de hecho y de derecho cancelados, y se cancelarán en el registro, previa presentación del oportuno mandamiento judicial en que consten la venta o la adju-

dicación y sus causas, con expresión del acto que constituya la solvencia del crédito preferido, todas las inscripciones posteriores de censos e hipotecas y las anotaciones de embargo hechas también con posterioridad, dejando libres de todo gravamen por estos conceptos la finca o fincas enajenadas o adjudicadas.''

Con arreglo a la ley y a la jurisprudencia hoy vigentes, el cobro de un crédito hipotecario puede perseguirse por el procedimiento sumario de la Ley Hipotecaria y su Reglamento, o con sujeción a los preceptos del Código de Enjuiciamiento Civil, debiendo regularse en uno y otro caso por la ley aprobada en 9 de marzo de 1905, la vía de apremio o la venta de los bienes hipotecados. *Jiménez et al.* v. *Brenes,* 10 D. P. R. 128; *Banco Territorial y Agrícola* v. *Erwin, Juez de Distrito,* 10 D. P. R. 412; *El Pueblo* v. *The Port América Co.,* 13 D. P. R. 128; *Cintrón et al.* v. *El Banco Territorial y Agrícola,* 15 D. P. R. 507.

Con relación al procedimiento sumario para el cobro de créditos hipotecarios establecido por el artículo 128 y siguientes de la Ley Hipotecaria y completado por el artículo 168 y siguientes del Reglamento para la ejecución de dicha ley, ordena el artículo 171 del Reglamento en su último apartado, que cuando en las certificaciones del registro de la propiedad consten los domicilios de las personas interesadas en las responsabilidades que se hubieran inscrito después del derecho del actor, el juez mandará a la vez, que el requerimiento de pago al deudor, que se intente la notificación del auto de requerimiento a dichas personas interesadas en aquellos domicilios si en ellos fueren habidos; y para el caso de que no tenga efecto la notificación expresada, previene el artículo 172 en su párrafo 2º. que los edictos señalando día, hora y sitio del remate servirán también para hacer saber la subasta a los acreedores que tengan inscritos o anotados sus derechos sobre los bienes con posterioridad al del ejecutante, debiendo expresarse al efecto los nombres de éstos interesados según resulten de la certificación del registro para que puedan concurrir a la subasta si les conviniere.

La Ley de Enjuiciamiento Civil que comenzó a regir en esta isla desde el día 1º. de enero del año 1886, y que en la parte relativa a ejecución de sentencias no fué derogada por la Orden General No. 118 de agosto 15, 1899, sino que estuvo vigente hasta que fué sustituída por el código actual en 1º de julio de 1904, ordenaba en su artículo 1488 que cuando de la certificación del registrador de la propiedad resultaban gravados los bienes embargados con segundas o posteriores hipotecas no canceladas, debía hacerse saber a los acreedores que se hallaran en ese caso, el estado de la ejecución para que intervinieran en el avalúo y subasta de los bienes si les conviniera, y contenía en sus artículos 1516 y 1517 preceptos análogos a los del artículo 125 de la Ley Hipotecaria que dejamos transcrito.

Tenemos, pues, que con sujeción a la antigua Ley de Enjuiciamiento Civil y a la Ley Hipotecaria, los segundos y siguientes acreedores hipotecarios eran notificados del procedimiento de apremio seguido para el cobro del crédito de un acreedor hipotecario preferente y esa notificación debe llevarse a cabo en el procedimiento sumarísimo actualmente vigente, según disponen los artículos 171 y 172 del Reglamento para la ejecución de la Ley Hipotecaria. En virtud de tal notificación, los segundos y siguientes acreedores hipotecarios tienen conocimiento del procedimiento de ejecución y pueden intervenir en la subasta. Si no intervinieren, no pueden quejarse de sufrir agravio por la aplicación del artículo 125 de la Ley Hipotecaria.

Si se sigue el procedimiento ordinario o común para el cobro de un crédito hipotecario, la ley de 9 de marzo de 1905 relativa a las sentencias y la manera de satisfacerlas, nada dispone con relación a los segundos y posteriores acreedores hipotecarios, pero su silencio no puede autorizar que sin haber tenido ellos noticia previa de la subasta, se dé cumplimiento respecto de los mismos, al artículo 125 de la Ley Hipotecaria. Están interesados en la subasta por tener un derecho real sobre la finca que se va a enajenar, y convenir-

les que se obtenga el mayor precio en la venta. La noticia previa es indispensable para que la cancelación se lleve a efecto mediante debido procedimiento de ley.

En apoyo de la anterior doctrina podemos citar nuestra decisión en el caso de *Canals Hermanos & Compañía, S. en C.,* v. *Ortiz et al.,* 22 D. P. R. 74. En dicho caso se solicitaba por la parte actora la venta de una finca hipotecada, con la cancelación en el registro de una segunda hipoteca, y como se alegara la excepción de indebida acumulación de partes por la razón de no serlo el segundo acreedor hipotecario, la corte dictó resolución en el sentido de que siendo una de las peticiones de la demanda la venta de la finca hipotecada, y pretendiéndose además la cancelación de ambas hipotecas en el registro de la propiedad, era un hecho claro que el segundo acreedor hipotecario era propia parte. Si hubiera podido decretarse la cancelación de la segunda hipoteca después de satisfacerse la primera sin quedar residuo alguno, y para ello no hubiera sido necesario dar noticia alguna de la subasta al segundo acreedor hipotecario, indudablemente hubiera prosperado la excepción de indebida acumulación de partes.

En el caso expresado, tal como se formuló la demanda, era parte propia el segundo acreedor hipotecario, pero cuando la demanda se dirige únicamente contra el deudor, como en el presente caso, la notificación previa de la subasta al segundo y posteriores acreedores hipotecarios, es bastante para la cancelación de las hipotecas posteriores. Así interpretamos el artículo 125 de la Ley Hipotecaria, en armonía con los 152 y 171 del Reglamento, y damos aplicación al artículo 36 del Código de Enjuiciamiento Civil.

Es de confirmarse la resolución apelada.

*Confirmada la resolución apelada.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro y Aldrey.

El Juez Asociado Sr. Hutchison firmó ''conforme con la sentencia.''