JOSÉ LUIS VENDRELL y PÉREZ VALDIVIESO, demandante y recurrente, *v.* BERNARDO TORRES AGUILÓ y AGUSTINA PAGÁN VALENTÍN, demandados y recurridos; SUCESORES DE TRUJILLO & SUBIÑÁ, interventores.

*Número:* 235          *Resuelto:* 29 de junio de 1962

*R. Muñoz Ramos* e *I. Acevedo de Campos,* abogados del recurrente y peticionario; *José Guillermo Vivas Rosaly,* abogado de los interventores.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Sobre cierto inmueble gravitaban dos hipotecas. La primera, gravamen preferente, garantizaba el precio aplazado en el contrato de adquisición por el comprador. La segunda, fue constituida posteriormente para garantizar un pagaré al portador. El mismo día que se otorgó esta segunda escritura—6 de noviembre de 1957—se entregó el pagaré hipotecario a Sucrs. de Trujillo y Subiñá, Inc., para garantizar ciertas obligaciones que tenía el comprador con esa corporación. Esta escritura fue inscrita el 12 de noviembre de 1957. No se pagó la suma garantizada por la primera hipoteca. Se instó acción ordinaria en ejecución de hipoteca en noviembre de 1958 para recobrarla.(¹) Dictada sentencia y no habiendo sido satisfecha, se ordenó la venta del inmueble para hacerla efectiva.

El edicto publicado para notificar que se vendería en subasta pública el inmueble antes referido no contenía aviso alguno dirigido al tenedor del pagaré garantizado con la segunda hipoteca. Se celebró la subasta y se adjudicó el inmueble al acreedor hipotecario que había demandado en cobro de su crédito. Al presentarse al Registro la escritura de venta judicial el Registrador hizo constar en la nota que la finca estaba gravada con la hipoteca que garantiza el pagaré al portador. Radicó entonces el primer acreedor dentro del pleito principal, una moción para que se ordenara la cancelación de la segunda hipoteca. Alegó que como "la propiedad fue adjudicada . . . por la deuda existente a la fecha de venta en pública subasta, no habiendo por tanto superado al primer crédito hipotecario el valor de lo vendido" procede de acuerdo con lo dispuesto en el art. 125 de la Ley Hipotecaria y el Art. 132 de su Reglamento, que se "libre el correspondiente Mandamiento Judicial para que por el Sr. Regis-

---

(¹) Aunque la demanda se tituló en cobro de dinero la realidad es que la acción era una de ejecución ordinaria pues se solicitaba que la finca fuera vendida en subasta pública para satisfacer la hipoteca.

trador de la Propiedad se proceda a cancelar la segunda hipoteca que grava la finca y que fue constituida para garantizar el pago del referido pagaré al portador". El tribunal de instancia negó esta pretensión, fundándose en que el tenedor del pagaré garantizado con la segunda hipoteca no fue notificado de la celebración de la subasta ordenada por el tribunal. Accedimos a revisar esa actuación.(²) � ■

Adjudicada la finca en pago del crédito que garantiza una primera hipoteca, sin que se supere el importe de ésta procede la cancelación de los gravámenes posteriores. Efectivamente así lo disponen los preceptos hipotecarios, invocados por el recurrente. Pero hemos resuelto en *Montes de Oca* v. *Báez et al*, 23 D.P.R. 707 (1916) que para que proceda tal cancelación precisa que se notifique de la subasta a los acreedores posteriores garantizados con hipoteca. A ese efecto dijimos la pág. 711:

"Si se sigue el procedimiento ordinario o común para el cobro de un crédito hipotecario, la ley de 9 de marzo de 1905 relativa a las sentencias y la manera de satisfacerlas, nada dispone con relación a los segundos y posteriores acreedores hipotecarios, pero su silencio no puede autorizar que sin haber tenido ellos noticia previa de la subasta, se dé cumplimiento respecto de los mismos, al artículo 125 de la Ley Hipotecaria. Están interesados en la subasta por tener un derecho real sobre la finca que se va a enajenar, y convenirles que se obtenga el mayor precio en la venta. La noticia previa es indispensable para que la cancelación se lleve a efecto mediante debido procedimiento de ley."

Véase: Ramos Folqués, *El Problema de la Notificación a los Anotantes Posteriores*, 26 Revista Crítica de Derecho Inmobiliario, 609 (1953).

Aquí hemos visto que no se verificó tal aviso. Ahora la parte recurrente sostiene que en el presente caso no se requería tal notificación. Su tesis es al efecto de que "no ha-

---

(²) Consideraremos el auto de revisión expedido como uno de certiorari. Lo que se intenta revisar es una resolución dictada después de sentencia.

biendo sido nunca negociado el pagaré garantizado con la segunda hipoteca no existe acreedor hipotecario alguno de esta segunda hipoteca porque siendo dueño del pagaré el propio deudor y no pudiendo co-existir el deudor y el acreedor en una misma persona sigue que no es necesaria notificación alguna a un segundo acreedor [que] no tiene existencia legal". Y como el Art. 1768 del Código Civil, 31 L.P.R.A. sec. 5027, dispone que "[m]ientras no llegue el caso de ser expropiado de la cosa dada en prenda, el deudor sigue siendo dueño de ella", la situación no cambia y no existe acreedor hipotecario a quien se requiera notificar de la subasta. ■

La tesis del recurrente descansa en una premisa falsa. La de que el pagaré no fue negociado. Hemos visto que el pagaré fue entregado a la Corporación Sucesores de Trujillo y Subiñá el mismo día que fue expedido y garantizado con hipoteca. Se traspasó el pagaré para garantizar una deuda mayor que el monto del pagaré. El Art. 31 de la Ley de Instrumentos Negociables, 19 L.P.R.A. sec. 61, dispone que "[u]n documento se negocia cuando se traspasa por una persona a otra de modo tal que constituya al cesionario en tenedor del mismo. Si es pagadero al portador, queda negociado por el endoso del tenedor completado con la entrega". El hecho de que en el documento en el que se convino el traspaso del pagaré a la corporación se hiciera constar que se daba en prenda, no altera la situación. Técnicamente de acuerdo con las disposiciones del Art. 1768, el dueño del pagaré lo era el que lo expidió, pero su mera entrega para garantizar una deuda lo había puesto en circulación, y había surgido a la vida del derecho un documento negociable con valor. Si no fuera así no tendría valor alguno para el que lo recibía en garantía y serían inútiles las disposiciones de ley que autorizan la expedición de pagarés al portador. Así lo pretende el demandante en este caso. Sostiene que puede rematar la finca gravada que garantiza el pagaré sin necesidad de notificarle de la subasta al tenedor del mismo. El contrato de dación en prenda de un pagaré hipotecario cons-

tituye un negocio jurídico, por la naturaleza del cual el acreedor prendario adquiere un interés especial en el pagaré mismo. ■

Reconocido el interés especial que tiene el tenedor de un pagaré dado en prenda, ciertamente tiene derecho a que se le notifique de la venta en subasta pública del inmueble que garantiza el pagaré que tiene en su poder. De lo contrario se convertiría en ilusoria la garantía.

*Se anulará el auto expedido y se confirmará la Resolución dictada por el Tribunal Superior, Sala de Ponce, con fecha 15 de octubre de 1959.*