*757 TEXTO COMPLETO DE LA SENTENCIA
La parte apelante, doña Carmen Cosme Santiago, nos solicita la revocación de la sentencia sumaria dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, que declaró con lugar la demanda de cobro de dinero y ejecución de hipoteca por la vía ordinaria que el apelado, don Luis Enrique León Colón, presentó contra ella. El señor León Colón es el tenedor de un pagaré al portador, que vencía a su presentación, cuyo pago fue garantizado con una segunda hipoteca sobre un inmueble registrado como propiedad de la parte apelante.
Luego de evaluar los méritos del recurso, resolvemos revocar la sentencia apelada y ordenar la continuación de los procedimientos.
I
Los hechos no controvertidos que originaron el caso de autos son los siguientes. El 19 de septiembre de 2002, la señora Cosme Santiago suscribió un “pagaré hipotecario”, cuyo texto expresa que fue expedido a favor del “portador, tenedor o legítimo endosatario de esta obligación, o a su orden, a su vencimiento [,] [por] la suma de treinta mil dólares ($30,000.00), más sus intereses al tipo de diez por ciento (10%) anual, en moneda de curso legal de los Estados Unidos de América sin descuento alguno ni contra reclamación”. La otorgante pactó, además, un crédito adicional de $3,000 para las costas y los gastos y honorarios de abogado, en caso de reclamación judicial o ejecución, y garantizó ambas obligaciones con una segunda hipoteca sobre la finca núm. 12,037, que consta inscrita a su nombre en el Registro de la Propiedad, al folio 66 del tomo 454, correspondiente a Santurce Norte, de la Sección Primera de San Juan. El pagaré al portador fue emitido y suscrito por la apelante en San Juan, Puerto Rico, ante el notario público Ledo. Rolando A. Silva. Ante el mismo notario y en igual fecha se otorgó la escritura de constitución de hipoteca, con rango de segunda, sobre la aludida propiedad. No hay controversia sobre estos hechos, a tenor de las alegaciones y admisiones de ambas partes.
El señor León Colón advino posteriormente portador o tenedor del pagaré. Según las alegaciones de la demanda, que la sentencia acoge como determinación de hecho probado, el señor León Colón le hizo un requerimiento formal de pago a la parte apelante, mediante comunicación enviada por correo certificado con acuse de recibo, pero ésta no satisfizo la deuda. 
El señor León Colón presentó la demanda de cobro el 5 de diciembre de 2003. La parte apelante presentó su *758 contestación a la demanda oportunamente y levantó algunas defensas afirmativas. Fundado en las alegaciones de la demanda y en la alegación responsiva de la parte demandada, así como en el contenido del pagaré y la escritura de constitución de la garantía hipotecaria, el señor León Colón apelado presentó una moción de sentencia sumaria. La parte apelante solicitó el descubrimiento de prueba, por medio de un pliego de interrogatorio, pero éste fue denegado por el tribunal a quo, a petición de la parte apelada, porque tenía ante su consideración la previa solicitud de apremio procesal del señor León Colón.
Once meses después de presentada la acción, luego de cambiar de representación legal, la apelante solicitó que se le permitiera enmendar la contestación de la demanda, gestión que le fue autorizada. En esta ocasión levantó varias defensas afirmativas, que podemos dividir en dos grupos: primero, las atinentes al valor del pagaré como instrumento negociable en manos de un tenedor que no fue quien le prestó el dinero, y segundo, las referentes al contenido mismo de la deuda.
En cuanto al primer grupo de defensas, alegó que no realizó negociación alguna con el apelado; que desconoce la forma y manera en que éste advino a ser tenedor y poseedor del pagaré; y que el apelado no es tenedor de buena fe ni por valor recibido del pagaré. En cuanto al segundo grupo de defensas, alegó que “negoció un préstamo por la suma de $25,000.00 con el Ledo. Rolando A. Silva, para satisfacer en seis (6) meses la suma de $30,000.00, más el diez por ciento (10%) anual sobre esa suma, o sea, $31,500.00”; que la presente acción “es una de cobro de dinero, donde la parte demandada tomó a préstamo la suma de $25,000.00, no obstante, se esconde un interés de $5,000.00 para ser satisfechos en seis (6) [meses], más intereses a razón de un diez (10%) anualque la cantidad redamada “implica un interés real de veintiséis por ciento (26%) anual”, lo que constituye la usura prohibida por el Artículo 1649 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 4591; que el apelado sólo tiene derecho a recobrar el 75% de la acreencia, como penalidad por el pacto de intereses usurarios, debiendo destinarse el 25% restante al Estado Libre Asociado de Puerto Rico, a tenor del Artículo 1652 del Código Civil, 31 L.P.R.A. see. 4594. A base de esta última defensa solicitó que el E.L.A. se incluyera como parte indispensable del proceso de ejecución. (Énfasis nuestro.) Adujo que la parte apelada sólo podía reclamarle el pago de $18,750, que es el 75% de los $25,000 que alegadamente constituye la deuda principal. Nos llama la atención que en su contestación enmendada, la parte apelante, en tono conciliador, solicitó al Tribunal de Primera Instancia que determinara “los derechos de las partes de acuerdo a derecho ”.
Trabada la controversia sobre el contenido de la obligación, el Tribunal celebró una vista para entender en los méritos de la reclamación y exigió la comparecencia personal de las dos partes. El apelado compareció a la vista personalmente, según intimado, no así la apelante, quien se hallaba fuera de Puerto Rico, pero estuvo representada por su abogada. El tribunal recibió la postura de las partes sobre todos los aspectos del caso, entre ellos, las alegaciones de la demanda y las defensas afirmativas invocadas por la parte apelante, particularmente las relativas a la usura y a la inclusión del E.L.A. como parte indispensable. Según la minuta de los procedimientos, declaró con lugar la solicitud de sentencia sumaria.
Sobre la defensa de la usura, el tenedor apelado alegó que, para la fecha en que el pagaré fue suscrito, no existía una tasa que limitara el monto del interés que podía imponerse sobre una obligación pecuniaria. Se amparó en el Reglamento Núm. 5722, aprobado el 21 de noviembre de 1997 por la Junta Financiera adscrita a la Oficina del Comisionado de Instituciones Financieras. Este reglamento fue adoptado “para disponer sobre las tasas de interés y otros cargos que podrán cobrarse o exigirse en determinadas clases de préstamos u obligaciones”, a tenor de las facultades concedidas por la Ley Núm. 4 de 11 de octubre de 1985, según enmendada, 7 L.P.R.A. see. 2001 et seq. Esta ley transfirió a la Junta Financiera todas las facultades que anteriormente tenía la Junta Reguladora de Tasas de Interés y Cargos por Financiamientos, creada por la Ley Núm. 1 de 15 de octubre de 1973. Véase 10 L.P.R.A. secs. 998a y 7 L.P.R.A. see. 2008. Adujo el tenedor apelado que el Reglamento 5722 eliminó todas las tasas máximas de interés en los préstamos de dinero, por lo que la defensa de usura que autoriza el Artículo 1652 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 4594, *759 era improcedente en este caso.
La apelante alegó que para que no aplique al tenedor apelado la defensa de usura que reconoce el Código Civil, tendría él que estar cubierto por el Reglamento de Intermediación Financiera, Núm. 5271, aprobado el 10 de noviembre de 1997 por la Oficina del Comisionado de Instituciones Financieras, a tenor de la Ley Núm. 214 de 14 de octubre de 1995, ya citada, que regula la gestión de ofrecer préstamos personales no regulados por la Ley de Préstamos Personales Pequeños. Carente el tenedor original y el apelado de una licencia del Comisionado de Instituciones Financieras, no está sujeto a las ventajas que ofrece la legislación y la reglamentación citadas.
Luego de evaluar los argumentos de ambas partes, el foro apelado declaró con lugar la solicitud de sentencia sumaria. Concluyó que la referida obligación asumida por la parte apelante lo es por una suma cierta, líquida y legalmente exigible y que se halla vencida; que ante la negativa de la parte demandada a efectuar el pago de la suma adeudada, el apelado instó la presente acción; que por admisiones de la parte apelante, ésta no es persona incapacitada, menor de edad ni se halla en servicio militar activo, “por lo que no hay ningún impedimento conocido en derecho para que pueda procederse con la ejecución de la mencionada garantía hipotecaria”. Ordenó a la parte apelante al pago de $30,000, valor que surge de la faz del instrumento, más los intereses del tipo convenido de 10% anual desde el día 5 de diciembre de 2003, fecha de la interposición de la demanda, más los $3,000 estipulados para cubrir las costas, los gastos y honorarios de abogado. También le impuso el 7% de interés sobre el monto de la sentencia que autoriza la Regla 44.3 de Procedimiento Civil, 32 L. P.R.A. Ap. IE, R. 44.3.
Inconforme, la parte apelante acude ante nos y señala cuatro errores al foro apelado: 1) al declarar con lugar la demanda mediante una sentencia sumaria, aunque había controversias de hechos y de derecho que lo impedían; 2) al no permitirle a la parte apelante el descubrimiento de prueba; 3) al no aplicar la defensa de usura; 4) al imponerle el pago del interés legal sobre la sentencia, al amparo de la Regla 44.3, cuando ya hay un interés fijado y aplica la defensa de usura.
Antes de considerar por separado cada error señalado, es indispensable evaluar, primero, las figuras del pagaré al portador con garantía hipotecaria y del tenedor, como adquirente de ese instrumento negociable; y segundo, la legislación aplicable al tipo contractual en juego, es decir, el préstamo con interés entre sujetos privados, según regulado por el Código Civil de Puerto Rico y la legislación especial aludida.
II
A. El pagaré al portador como instrumento negociable
La Ley de Transacciones Comerciales, Ley Núm. 241 de 10 de septiembre de 1996, 19 L.P.R.A. sees. 503 et seq., que a su vez enmendó la Ley Núm. 208 de 17 de agosto de 1995, 19 L.P.R.A. sees. 401 et seq., define el “instrumento negociable” como “una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo:

(1) Es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;

(2) es pagadero a la presentación o en una fecha específica; y

(3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, pero la promesa u orden puede contener: (A) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (B) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (C) una renuncia al beneficio de cualquier 
*760
ley que exista concediéndole una ventaja o protección a un deudor.

19 L.P.R.A. sec. § 504 (a)
En lo pertinente al asunto en disputa, esta legislación define el instrumento “pagadero al portador” como la promesa u orden que: (1) especifica que es pagadera al portador o a la orden del portador o de otra forma indica que la persona en posesión de la promesa u orden tiene derecho al pago; (2) no designa un tomador; (3) especifica que es pagadera a, o a la orden de, efectivo (cash) o de otra forma indica que no es pagadera a una persona identificada. 19 L.P.R.A. see. 509.
El término “portador” se define como “la persona en posesión de un instrumento, documento de título, o valor con certificado pagadero al portador o endosado en blanco”. 19 L.P.R.A. see. 451(5). Cualquier promesa u orden es pagadera a la presentación si: (1) especifica que es pagadera a la presentación o a la vista o de otra forma indica que es pagadera cuando el tenedor lo exija, o (2) no especifica ninguna fecha de pago. 19 L.P.R.A. see. 508. Por ello, el instrumento pagadero a la presentación se convierte en moroso el día después que se haga debidamente el requerimiento de pago al obligado. 19 L.P.R.A. see. 604. (a) (1). Una persona no incurre en responsabilidad ante el portador del instrumento a menos que: (1) haya firmado el instrumento, o (2) esté representada por un agente o representante que firmó el instrumento y cuya firma le obliga de acuerdo con lo dispuesto en la see. 652 de este título. 19 L.P.R.A. sees. 651, 652.
El pagaré al portador se transfiere por la mera entrega y, desde entonces, el tenedor o portador está activamente legitimado para reclamar su satisfacción. E.M.L. Insurance Company v. Banco Popular, 91 D.P.R. 645, 651 (1965); Lozada Merced v. Registrador, 100 D.P.R. 99, 104 (1971); Vendrell v. Torres Aguiló, 85 D.P.R. 873, 876 (1962). Por ello, se ha dicho que “los títulos al portador, por no ser nominativos, por no determinarse en su constitución la persona del acreedor, representan un crédito a ser pagado a la persona que tenga el título en su poder, al que lo presenta, sea quien fuere, toda vez que se transmite por la simple entrega, sin necesidad de endoso ni formalidad alguna, pues la simple entrega representa su transmisión”. FDIC v. Registrador, 111 D.P.R. 602, 605 (1981).
Por otro lado, no olvidemos que, a tenor de la doctrina civilista, estamos ante un negocio abstracto, cuya causa se presume por su sola existencia. S.J. Credit, Inc. v. Ramírez, 113 D.P.R. 181, 185 (1982).
Así, se ha reiterado que únicamente el tenedor de un instrumento negociable “está legitimado ad causam para demandar basándose en el mismo”. Véase a Papex International Brokers Ltd. v. Chase Manhattan Bank, N.A., 821 F.2d 883 (1987). Esto es así porque al portador le cobija la presunción legal de que el pagaré es válido y de que fue otorgado por causa justa y onerosa. A partir de este principio, no puede exigirse al portador que alegue y presente prueba para establecer que es dueño del pagaré; tampoco de que es tenedor de buena fe ni cuál es la causa onerosa específica que permitió su adquisición. La sola posesión equivale al título y le da al portador legitimación para presentarlo al cobro, porque “advino a la vida del derecho como documento negociable con valor”. Liechty v. Descartes Saurí, 109 D.P.R. 496, 502 (1980); Lozada Merced v. Registrador, 100 D.P.R. 99, 104 (1971); Navedo Torres v. Registrador, 87 D.P.R. 794, 798 (1963); y Vendrell v. Torres Aguiló, 85 D.P.R. 873, 876 (1962).
Como consecuencia de los principios esbozados, corresponde al deudor demandado probar el defecto que le impide al portador presentarlo para su cobro. En ausencia de prueba de que en efecto no hubo causa onerosa para recibir el pagaré negociable garantizado con una hipoteca inmobiliaria, la presunción de validez que cobija las obligaciones principales constituidas en el pagaré, también aplica a las obligaciones subsidiarias, esto es, a las garantías. Véase Arroyo Pratts v. Tribunal Superior, 98 D.P.R. 149, 151 (1969); Pereira v. Commercial Transpon Co., 73 D.P.R. 326, 330 (1952); Caguas Co. v. Mombille, 58 D.P.R. 300, 307 (1941); The Texas Co. v. Estrada, Y Alvarez, Int., 50 D.P.R. 743, 749 (1936).
*761 B. El tenedor de buena fe
En el contexto de la legislación comercial, la buena fe significa “honestidad de hecho en la conducta o transacción [ ] correspondiente”. 19 L.P.R.A. see. 451(19). El tenedor o portador de un instrumento es un “tenedor de buena fe” si:

“(1) cuando fue emitido o negociado al tenedor, el instrumento no tenía evidencia aparente de falsificación o alteración ni era de tal forma irregular o incompleto como para que debiera cuestionarse su autenticidad; y

(2) el tenedor tomó el instrumento: (i) por valor, (ii) de buena fe, (iii) sin tener aviso de que el instrumento estuviese en mora o hubiese sido desatendido o de que existiese un incumplimiento no subsanado respecto al pago de otro instrumento emitido como parte de la misma serie, (iv) sin tener aviso de que el instrumento contiene una firma no autorizada o ha sido alterado, (v) sin tener aviso de la existencia de una reclamación contra el instrumento de las descritas en la see. 606 de este título, y (vi) sin tener aviso de que una parte tenga una defensa o reclamación de resarcimiento de las descritas en la sec. 605(a) de este título. ”

19 L.P.R.A. sec. 602(a).
Ajuicio de la doctrina, el tenedor de buena fe de un pagaré al portador tiene más derechos y protección que el tomador original, ya que no está expuesto a las defensas personales que el obligado pueda interponer al tomador original para no realizar el pago. El tenedor de buena fe puede cobrar la deuda que surge del texto del instrumento, aunque quien lo recibió como tomador original estuviera impedido de cobrarlo, por virtud de cualquier defensa que el obligado pudo presentar válidamente contra él. Véase Rafael Soltero Peralta y Jorge J. Oppenheimer Méndez, Derecho mercantil, 434-435 (Pub. Puertorriqueñas 1999). Por este tratamiento legal, para el Derecho cambiarlo, el tenedor de buena fe es un acreedor privilegiado. Miguel R. Garay Auban, Derecho cambiarlo 189 y ss. (Edit. Rev. Der. Ptqño 1999).
C. Las defensas que pueden imponerse al tenedor de buena fe
La Ley de Transacciones Comerciales regula las defensas que un obligado puede interponer al tenedor de un instrumento que lo presenta a su cobro. Expresamente provee que el derecho a exigir el cumplimiento de la obligación de pago contraída por una parte en un instrumento negociable, presentado al cobro por un tenedor de buena fe, está sujeto únicamente a las defensas de: “(i) la minoría de edad del deudor en la medida que sea una defensa contra un contrato simple, (ii) coacción, falta de capacidad legal o ilegalidad de la transacción que, bajo otra ley, anula la obligación del deudor, (iii) fraude que indujo al deudor afirmar el instrumento sin tener conocimiento ni oportunidad razonable de saber el carácter o los términos esenciales del instrumento, o (iv) la liberación del deudor en un procedimiento de insolvencia;[...]”. (Énfasis nuestro.) 19 L.P.R.A. see. 605 (a)(1).
Es decir, el deudor “no está obligado a pagar el instrumento si la persona que está exigiendo el cumplimiento del instrumento no tiene los derechos de un tenedor de buena fe y el deudor prueba que el instrumento es uno perdido o robado”. 19 L.P.R.A. sec. 605(c). Esto es así, porque el tenedor de buena fe recibe el instrumento exento de reclamaciones, salvo las que atañen al instrumento mismo. Véase a Silva v. D.G.S.T. Two, Inc., 113 D.P.R. 747, 749 (1983); Garay Auban, Op. Cit.,págs. 241-245.
En el caso de autos, la parte apelante no levantó ninguna de estas defensas específicas contra el tenedor apelado, aunque debemos considerar más adelante si la defensa de usura puede ubicarse entre las que se refieren a la “ilegalidad de la transacción”.
En conclusión, el pagaré al portador de autos está sujeto, por su negociabilidad, a la Ley de Transacciones *762 Comerciales. Así se reconoció en Soc. de Gananciales v. Paniagua Diez, 142 D.P.R. 98, 105 (1996), en que se citó con aprobación la opinión de Lorenzo Benito, Manual de Derecho Mercantil 746 (Victoriano Suárez 1924). Sin embargo, esto no significa que la negociación económica que lo originó esté sujeta a la Ley de Instituciones Financieras o a las tasas de interés fijadas por la Junta Financiera. Si así fuera, el tomador original tendría que tener, como bien señala la parte apelante, una licencia para operar como prestamista matriculado, es decir con licencia para realizar este tipo de actividad y sujeto a la regulación de la Oficina del Comisionado de Instituciones Financieras. De las determinaciones de hechos de la sentencia apelada ni de las alegaciones de las partes, ya sea de la demanda o de la contestación, surge que tal sea el caso ante nos.
D. El contrato de préstamo con interés y su regulación por la Junta Financiera
El contrato de préstamo entre sujetos privados está regulado por los artículos 1644 a 1657 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 4571 a 4599. Las disposiciones del Código Civil constituyen el derecho general o común que rige las relaciones jurídicas entre individuos, salvo que las relaciones en controversia estén reguladas por legislación especial, en cuyo caso se permite la fijación de interés sobre la cuantía prestada, aunque se establece el máximo del tipo fijado por convenio especial. Así, el artículo 1649 dispone que:

“A falta de un contrato previo escrito, el tipo de interés sobre préstamos o prórrogas de dinero o mercancías o sobre cualquier clase de obligación o contrato será de seis (6) dólares anuales sobre cada cien (100) dólares o sobre su equivalente en valor, y al mismo tipo por una suma mayor o menor, o por un período más largo o más corto; Disponiéndose, sin embargo, que no podrá fijarse un tipo de interés, por convenio especial, que sea mayor de nueve (9) dólares anuales sobre cada cien (100) dólares o sobre su equivalente en valor, cuando el capital objeto del préstamo o del convenio no exceda de $3,000 y de ocho (8) dólares anuales por cada cien (100) dólares, cuando pase de dicha cantidad. Dentro de los límites que por este título se fijan, será legal descontar letras y pagarés y otras obligaciones análogas. ”

31 L.P.R.A. see. 4591.
El Código Civil expresamente dispone que el Artículo 1649 “no será aplicable a los préstamos hechos por los prestamistas matriculados, o a los bonos y contratos sobre préstamos a la gruesa y a riesgo marítimo”. 31 L.P.R.A. see. 4593. Sin embargo, la Ley 1 de 15 de octubre de 1973 adoptó el texto de este precepto en su Artículo 1, 10 L.P.R.A. see. 998, y copió los límites fijados por el Artículo 1649 para el cobro de intereses en los negocios pecuniarios entre particulares como los intereses máximos permitidos a otros sectores de la economía. Estas tasas homologas estuvieron vigentes para los negocios realizados por las instituciones financieras y bancadas, hasta que la Junta Reguladora de Tasas de Interés fue sustituida en 1985 por la Junta Financiera.
Es significativo que el Artículo 8 de la Ley 1, ya citada, según enmendada por la Ley 319 de 23 de octubre de 1999, expresamente provee sobre este asunto:

“Las disposiciones de este capítulo en nada afectan, modifican o alteran la responsabilidad de carácter civil en que pueda incurrir cualquier persona natural o jurídica en virtud de los artículos del Código Civil de Puerto Rico que tratan sobre la fijación del interés legal, y el modo de recuperar las cantidades pagadas de más sobre el mismo, entendiéndose, sin embargo, que la tasa de interés o cargos que pueda fijar la Junta o la determinación de la Junta relativa a no fijar tasas máximas de interés y dejar el mercado a la libre competencia, en su caso, prevalecerá sobre lo dispuesto por dicho Código.

[...]".

(Énfasis nuestro.) 10 L.P.R.A. sec. 998g.
*763 Por otro lado, el Artículo 8 de la Ley de Instituciones financieras, Ley Núm. 4, ya citada, faculta a la Junta Financiera a:

“fijar, regular, aumentar o disminuir, por reglamento y, durante el tiempo que ello fuere necesario, los tipos de interés o cargos máximos aplicables a determinadas transacciones económicas dentro del marco de cualquier sector, renglón o actividad del país, no cubiertas por leyes especiales, excepto la sección 14 de la Ley Núm. 55 de 12 de mayo de 1933, según enmendada, incluyendo el interés pagadero sobre depósitos en instituciones bancarias e instituciones financieras, pero todo ello sujeto y de conformidad con las siguientes normas:

(1) El tipo de interés y el sector económico al cual fuere aplicable se determinará por reglamento.

(2) La determinación de elevar las tasas de interés será tomada cuando razonablemente puede anticiparse que por causa de discrepancias entre las tasas de interés prevalecientes en el mercado y las máximas permitidas por ley en Puerto Rico hay el riesgo de que se detenga o reduzca la inversión de capital en determinados sectores o actividades económicas en Puerto Rico.

(3)La decisión deberá estar basada en un estudio sobre el costo prevaleciente en el mercado para el dinero disponible para financiar diferentes renglones o actividades económicas y el perjuicio a la economía en general, a cualquiera de sus sectores o al ciudadano, que pudiera ocurrir de no tomarse acción para cambiar, aumentando o reduciendo las tasas de interés o cargo vigentes en un momento dado. La Junta Financiera podrá, además, determinar no fijar tasas máximas de interés y cargos, y dejar el mercado a la libre competencia. ”

7 L.P.R.A. see. 2008.
La Junta Financiera, así facultada para ello, adoptó el Reglamento 5722 en noviembre de 1997 para, entre otras medidas, eliminar las tasas de interés para determinados sectores de la economía. Tal reglamento dispone en su Artículo 2 que: “versa sobre las tasas de interés y cargos permisibles, e incluye la desreglamentación de las tasas de interés en determinadas transacciones económicas dentro del marco de cualesquiera sector, renglón, o actividad económica efectuada en Puerto Rico que no estén expresamente cubiertos por leyes especiales que fijen tasas de interés”. 
Para cumplir este propósito, los artículos 5, 6 y 7, que regulan los préstamos personales, comerciales e hipotecarios, respectivamente, no fijan tasas máximas de interés y expresamente disponen que “las tasas de interés podrán pactarse conforme a la libre competencia”. Sobre este artículo, el señor León Colón sostiene la corrección de la sentencia apelada en cuanto a la no aplicación de la defensa de usura que reclama la apelante.
Advertimos, sin embargo, que el Artículo 10 del Reglamento 5722 dispone que “[tjoda persona que otorgue préstamos bajo las disposiciones de este reglamento vendrá obligada a mantener en forma prominente en un sitio visible en su lugar de negocio las tasas y cargos para los préstamos que ofrece”, así como “a someter por escrito un detalle al prestatario sobre dichas tasas, cargos y penalidades, si alguna, al imponerle las mismas”. Incluso, en el mismo artículo se requiere que “[tjoda persona sujeta a este reglamento deberá cumplir con todas las disposiciones de leyes y reglamentos federales aplicables a los tipos de transacciones aquí reglamentadas [,] las cuales se incorporan aquí por referencia ”. Otros artículos se refieren a los distintos tipos de préstamos que generan las instituciones financieras y bancarias, penalidades y la necesidad de rendir informes. La agencia llamada a administrar este reglamento es el Comisionado de Instituciones Financieras.
Se ha dicho, que “[ajunque el préstamo usurario es un contrato con causa ilícita, el legislador ha formulado reglas especiales para regular sus efectos”. J. E. Candal & Co. v. Rivera, 86 D.P.R. 508, 517 *764 (1962). Entre esas reglas se halla la que provoca la controversia medular del casó de autos, el Artículo 1652 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 4594. Éste dispone que un contrato de préstamo con intereses usurarios sólo puede hacerse efectivo en un tribunal de Puerto Rico, por el importe del capital adeudado. Como sanción por el pacto ilícito, el tribunal no liberará al deudor del pago principal, pero condenará al acreedor al cobro de un setenta y cinco por ciento del capital adeudado y ordenará que el veinticinco por ciento restante se le adjudique al Estado Libre Asociado de Puerto Rico. En el caso de autos, la apelante admite la deuda por $25,000, y se ha sometido voluntariamente a esta sanción legal.
En Mansiones de Park Gardens, Inc. v. Scotiabank de Puerto Rico, 114 D.P.R. 513, 515 (1983), el Tribunal Supremo se enfrentó por primera vez al impacto de la Ley Núm. 1 de 15 de octubre de 1973, 10 L.P.R.A. see. 998 y ss., sobre otra legislación vigente. Específicamente tuvo que considerar si la Ley que creó la Junta Reguladora de Tasas de Interés y Cargos por Financiamiento derogó sub silentio el Artículo 1206 de la antigua Ley General de Corporaciones. 14 L.P.R.A. see. 2206. Concluyó que esa no fue la intención legislativa. 
En Gallardo v. Petiton, 132 D.P.R. 39 (1992), el Alto Foro se enfrentó a una relación contractual que ocultaba intereses usurarios y avaló la vigencia del articulado del Código Civil que sanciona la usura, pero no hizo referencia a la legislación financiera que provoca la controversia de autos. No ha examinado el Tribunal Supremo la cuestión específica que tenemos ante nos: si las leyes 1 de 1973 o la Ley 4 de 1985 derogaron o hicieron inoperantes los artículos 1649 y 1652 del Código Civil de Puerto Rico en cuanto a las tasas de interés imperante en los préstamos entre particulares.
Este recuento normativo es importante para determinar la corrección de la disposición del caso mediante sentencia sumaria.
E. Las vías de cobro y de ejecución de la garantía
Es doctrina reiterada que “[e]n los casos de hipotecas otorgadas en garantía de pagarés al portador o transferibles por endoso, el gravamen hipotecario queda constituido desde que se otorga e inscribe la hipoteca y, desde ese momento existen: un deudor conocido; un acreedor o acreedores genéricos, no importa el nombre y sí sólo el carácter de endosatarios o de tenedores; una obligación determinada y una garantía de la misma”. (Énfasis nuestro.) Sucesión Franceschi v. Registrador, 39 D.P.R. 736, 740 (1929), seguido en Srio. de Hacienda v. Tribunal Superior, 95 D.P.R. 436, 441 (1967).
El título sobre el pagaré y sobre la hipoteca se traspasa al tenedor de buena fe con la transferencia de la posesión del instrumento. Desde su vencimiento, si está fechado, o a su presentación, si fue emitido “a la vista” o sin fecha, el tenedor o portador tiene derecho a cobrar las obligaciones principales y accesorias que surgen del instrumento por la vía judicial.
Para hacer efectiva la garantía real, el portador o tenedor tiene derecho a ejecutarla por cualquiera de las tres vías procesales disponibles para ello: el procedimiento de ejecución por la vía ordinaria, el procedimiento ejecutivo sumario y la acción ordinaria de cobro de dinero con embargo de la finca, si así lo desea, en aseguramiento de sentencia. Arts. 201 y ss. de la Ley Hipotecaria y del Registro de la Propiedad de 1979, 30 L.P.R.A. sec. 2701 y ss.; Regla 51.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 51.3; Regla 51 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 51; Atanacia Corp. v. J.M. Saldaña, Inc., 133 D.P.R. 284, 292 (1993).
En el caso de autos se utilizó la acción de cobro y de ejecución por la vía ordinaria. Este dato es importante para disponer del señalamiento de error relativo a la paralización del descubrimiento de prueba.
*765 m
Luego de atender las particulares controversias que presenta el caso de autos, analicemos los señalamientos de error imputados al foro apelado, a la luz de esta reseña normativa.
Tras analizar el extenso historial legislativo de las leyes que hemos reseñado, así como el propósito que anima la reglamentación aplicable, resolvemos que, al aprobarse esa normativa, no fue la intención legislativa dejar sin efecto la defensa de usura para los casos en que dos personas particulares suscriben un contrato de préstamo al amparo del Código Civil de Puerto Rico, sobre todo, si ninguna de ellas es un prestamista matriculado ni se dedica a ese tipo de actividad económica bajo la tutela del Estado.
Aunque se presume la validez y la causa del pagaré al portador, una vez el deudor levanta la defensa de usura contra el tenedor, siendo ésta una defensa irrenunciable dirigida contra la obligación o el instrumento mismo, el peso de la prueba sobre ese particular cambia y es el tenedor quien viene obligado a probar que el instrumento se emitió legalmente en su origen y que conserva todos sus atributos, incluida la protección que le ofrece el Reglamento 5722 a la tasa de interés fijada en el 10%. Si no fuera así, bastaría con fijar intereses usurarios y negociar de inmediato el pagaré para evadir la defensa de usura. Nos parece que tal efecto sería nocivo a la misma política pública que persigue la legislación que regula el asunto, que es proteger a las personas con necesidad de recursos económicos de la avaricia del que presta a interés.
Un análisis ponderado del Reglamento 5722 nos obliga a concluir que regula únicamente a determinados sectores de la industria bancaria y financiera, por lo que no es necesariamente aplicable a la situación que tenemos ante nuestra consideración. El caso de autos, por las expresiones de las partes y las determinaciones del foro apelado, parece referirse a un préstamo que una persona particular tomó a otra y lo garantizó con un pagaré al portador que garantizó con una hipoteca sobre un inmueble. La tasa de interés aplicable sería la que fija el Artículo 1649 del Código Civil de Puerto Rico. El interés de 10% sobre $30,000 sería evidentemente usurario. En este caso, incluso, la tasa usuraria podría ser aún mayor, si atendemos a las alegaciones responsivas de la parte apelante. No cabe duda de que la alegación de usura puede considerarse dentro del concepto “ilegalidad de la transacción” que admite la Ley de Transacciones Comerciales como defensa. 19 L.P.R.A. sec. 605(a)(1). Véase a Basilio santiago Romero, Tratado de Instrumentos Negociables 186-187 (2da. ed., Edit. U.P.R. 1981) y las fuentes allí citadas sobre la usura como defensa real o de orden público contra el tenedor de buena fe.
Cabe mencionar que la determinación de si el pagaré en cuestión está o no cubierto por la legislación financiera aludida es una cuestión mixta de hecho y de derecho que debe atender el Tribunal de Primera Instancia. Este foro debe celebrar una vista evidenciaría, con el fin de tener todos los elementos de juicio necesarios para resolver lo que corresponda sobre este particular.
Ante esta posibilidad, de probarse las alegaciones de la parte apelante, la exención de los límites que impone el Código Civil dependería de la prueba afirmativa que presente el portador, cuando cambie el peso de la prueba. Éste tendría que demostrar que el préstamo se originó dentro del sector económico que regula el Comisionado de Instituciones Financieras y que él advino a ser tenedor de buena fe del susodicho pagaré luego de constituirse válidamente, al amparo de esa reglamentación.
Nótese, además, que la apelante alegó oportunamente que el pagaré y la hipoteca fueron emitidos para garantizar un préstamo de $25,000 más $5,000 como tasa prestataria adicional, todo ello sujeto a un 10% anual adicional. Si esto fuera cierto, estaríamos ante una situación contraria a la regulación especial que administra el Comisionado de Instituciones Financieras, pues, además de intereses, se le cobró una cuantía por otro concepto no contemplado en la reglamentación. Además, el pacto también sería contrario al Código Civil, por el efecto opresivo que reclama la apelante.
El Tribunal de Primera Instancia tiene que permitirle a la apelante el descubrimiento de prueba con ese *766 propósito acotado. Así lo autoriza la Regla 36.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III.
No hemos olvidado que la mejor prueba del contenido de un contrato es su texto, salvo que se ataque la validez misma del acuerdo escrito. Véase la Regla 69 de Evidencia, 32 L.P.R.A. Ap. IV, R. 69. La dificultad probatoria en estos casos aumenta porque estamos frente a contratos abstractos, para los que se presume su validez y su causa. Pero tal presunción es rebatible y sólo es posible lograr el propósito de derrotar la amplia protección que la ley da al instrumento negociable si se permite a la parte obligada la oportunidad de hacer el descubrimiento de prueba que solicita, sobre todo cuando el pleito se presentó y se ha desarrollado por la vía ordinaria.
Si la parte apelante puede probar que efectivamente tomó el préstamo a una persona natural o jurídica que no estaba sujeta a la reglamentación adoptada por la Oficina del Comisionado de Instituciones Financieras; que lo tomó por una cuantía menor a la que surge del pagaré, es decir, $25,000; y que en el monto se incluyó la cuantía de $5,000 más 10% sobre la suma total como interés, puede tener razón en su planteamiento sobre la usura. En ese caso procede aplicar la sanción del Artículo 1652 del Código Civil, ya citado.
Aclaramos, sin embargo, que de entender el Tribunal de Primera Instancia que hubo usura, el portador puede cobrar el 15% de $30,000 si no conocía que de esa cantidad, $5,000 constituían intereses pactados, ya que él adquirió el pagaré por el valor que surgía de su faz. La buena fe lo protege de este acto, no así del efecto usurario del 10% computado anualmente, según pactado, porque debió conocer que esa tasa era efectivamente contraria al límite establecido en el Artículo 1649.
Si el portador apelado conocía que tanto el 10% como los $5,000 constituían intereses sobre el principal, sólo tiene derecho a recibir el 75% de $25,000, que fue la suma prestada por el tomador original. La determinación final depende del modo en que el foro apelado dirima la prueba que presenten las partes en el juicio plenario, particularmente la que se dirija a rebatir la presunción de buena fe del portador.
Advertimos, además, que el efecto del Artículo 1652 es penalizar al acreedor por ser artífice del acuerdo ilícito; no es hacer parte indispensable al Estado Libre Asociado de Puerto Rico en el pleito de cobro del principal del préstamo. Como en toda imposición judicial de una sanción económica en beneficio del Estado, es la sentencia la que crea el crédito a su favor. Por ello, el Estado Libre Asociado “podrá obtener mandamiento de ejecución, del mismo modo que el demandante, y sin preferencia sobre el montante adjudicado a éste, para hacer efectivo el veinticinco por ciento así adjudicado”. Art. 1652. Es a partir de la sentencia que nace el interés del Estado Libre Asociado, no antes; por tanto no tiene porqué intervenir en un proceso que aún no resuelto la existencia de un alegado interés usurero.
Ante este cuadro normativo, erró el Tribunal de Primera Instancia al no permitirle a la apelante descubrir prueba para demostrar la veracidad de sus alegaciones y presentar con fundamentos las defensas contra la validez del instrumento y las relativas a la usura. También erró al dictar sentencia sumaria sin dar espacio a ese descubrimiento que perseguía recopilar la prueba para rebatir la presunción de validez del pagaré que generó la acción de cobro y ejecución que se inició en su contra.
En cuanto al cuarto señalamiento, recordamos a la parte apelante que la Ley Núm. 78 de 11 de julio de 1988 enmendó la Regla 44.3 de Procedimiento Civil, 32 L.P.R.A. R. 44.3, a los fines de establecer que el interés a pagarse sobre la cuantía de una sentencia será el que fije por Reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y esté en vigor al momento de dictarse sentencia. Nada evita que este caso esté sujeto a esa norma. No erró el foro apelado al sujetar la sentencia al interés correspondiente sobre este tipo de caso.
*767 IV
Por los fundamentos expresados, se revoca la sentencia apelada y se ordena la continuación de los procedimientos de conformidad con los pronunciamientos hechos en esta sentencia.
Notifíquese inmediatamente por fax o teléfono y por la vía ordinaria.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 16
1. La parte apelada negó esta alegación.
2. Esta sección dispone en cuanto a las facultades de la Junta Financiera para fijar las tasas de intereses:

"Art. 8. Junta financiera - Creación y miembros.

(a) Se crea la Junta Financiera en la Oficina del Comisionado, la cual se compondrá de nueve (9) miembros, incluyendo al Comisionado.

(b) [■■■]

Se faculta a dicha Junta para fijar, regular, aumentar o disminuir, por reglamento y, durante el tiempo que ello fuere necesario, los tipos de interés o cargos máximos aplicables a determinadas transacciones económicas dentro del marco de cualquier sector, renglón o actividad del país, no cubiertas por leyes especiales, excepto la sec. Ill de este título, incluyendo el interés pagadero sobre depósitos en instituciones bancarias e instituciones financieras, pero todo ello sujeto y de conformidad con las siguientes normas:

(1) El tipo de interés y el sector económico al cual fuere aplicable se determinará por reglamento.

(2) La determinación de elevar las tasas de interés será tomada cuando razonablemente puede anticiparse que por causa de discrepancias entre las tasas de interés prevalecientes en el mercado y las máximas permitidas por ley en Puerto Rico hay el riesgo de que se detenga o reduzca la inversión de capital en determinados sectores o actividades económicas en Puerto Rico.

(3) La decisión deberá estar basada en un estudio sobre el costo prevaleciente en el mercado para el dinero disponible para financiar diferentes renglones o actividades económicas y el perjuicio a la economía en general, a cualesquiera de sus sectores o al ciudadano, que pudiera ocurrir de no tomarse acción para cambiar, aumentando o reduciendo las tasas de interés o cargo vigentes en un momento dado. La Junta Financiera podrá, además, determinar no fijar tasas máximas de interés y cargos, y dejar el mercado a la libre competencia.

[■:]"■

1 L.P.R.A. see. 2008.
3. No ocurre así con el pagaré a la orden, sobre el que puede debatirse su particular naturaleza, mercantil o civil, según el tipo de acto que le da vida.
4. Así surge del historial legislativo de la Ley 1 de 1973.
Se introduce, además, un mecanismo que permite a la Asamblea Legislativa examinar los reglamentos promulgados por la Junta y de no estar conforme desaprobar o modificar éstos.
*768 Los reglamentos que se aprueben en virtud de las disposiciones del Artículo 3 no serán de aplicación a contratos u obligaciones anteriores a la fecha de vigencia de los reglamentos promulgados ni a sectores o actividades económicas regulados por leyes especiales.Además, establece penalidades para encarar violaciones al estatuto.
Esta medida legislativa está predicada en la necesidad de evitar que se reduzca o detenga el flujo de fondos de Estados Unidos hacia Puerto Rico para financiar actividades económicas de distingos sectores económicos del País.
Las tasas establecidas por la Ley de Usura de Puerto Rico están en estos momentos por debajo del nivel de las tasas de interés que prevalecen en el mercado de dinero en Estados Unidos. Ello trae como consecuencia una reducción apreciable en la oferta monetaria para financiar actividades económicas en el País. El sector de la construcción que tan importante es para el crecimiento de Puerto Rico resulta ser el más adversamente afectado.
Las Comisiones, luego de escuchados y examinados los distintos testimonios de los comparecientes, llegan a la conclusión de que el problema realmente significativo se manifiesta en el sector de la construcción de vivienda. Por tanto, las Comisiones recomiendan un ejercicio cauteloso de las facultades que aquí se delegan, muy especialmente cuando se relacionen las facultades que aquí se delegan; muy especialmente cuando se relacionen con préstamos a individuos hasta $2,500 y con préstamos a pequeños comerciantes en exceso de esa cantidad.
Informe Conjunto de la Cámara de Representantes de 3 de octubre de 2973 para el P. de la C. 676.
5. Mediante el Reglamento 6536 de 21 de octubre de 2002 se fijó la vigencia permanente del Reglamento 5722, cuyo texto original disponía que quedaría derogado a los cinco años de su aprobación.
6. Otra jurisprudencia dictada después de la aprobación de la Ley 1 de 1973 no altera lo ya dicho. Véase a Perdomo Álvarez v. Cintrón Salgado, 114 D.P.R. 126, 127-128 (1983), que discutió el alcance del Artículo 1654 del Código Civil, 31 L.P.R.A. sec. 4596; y a Velázquez v. C. Jiménez, Inc., 113 D.P.R. 667, 673 (1982), que analizó la sanción que impone el Artículo 1652 del Código Civil al acreedor usurero.
7. El procedimiento de ejecución por la vía ordinaria para el cobro de créditos hipotecarios es de naturaleza mixta porque contiene elementos de la acción real y de la personal. Este procedimiento se rige por las Reglas de Procedimiento Civil, Regla 51.3 et seq., y por ciertas disposiciones de la Ley Plipotecaria y del Registro de la Propiedad de 1979, Atanacia Corp. v. J.M. Saldaña, Inc., 133 D.P.R. a las págs. 292-293. Se inicia con la presentación de una demanda ante el tribunal con competencia y el emplazamiento del titular registral del bien o del derecho hipotecado o de sus causahabientes. Ramírez v. Registrador, 116 D.P.R. 541 (1985); Housing Inv. Corp. v. Registrador, 110 D.P.R. 490 (1980).