Robert H. Hau, recurrente, *v.* El Registrador de la Propiedad de Mayagüez, recurrido.

Núm. 1089.—*Sometido:* Mayo 31, 1941. *Resuelto:* Junio 6, 1941.

*José Sabater,* abogado del recurrente; el registrador recurrido compareció por escrito.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

En 15 de mayo de 1930, doña Josefa Ducord reconoció, por escritura otorgada ante el Notario don José Sabater,

estar adeudando a don Arturo Hau y Salguero la suma de $1,500, la que se comprometió a pagar en el término de dos años y en garantía de dicha suma, de sus intereses y de un crédito adicional para costas en caso de ejecución, constituyó hipoteca sobre una finca urbana de su propiedad radicada en Mayagüez, expidiendo en el acto del otorgamiento de dicha escritura cinco pagarés a la orden del Sr. Hau Salguero los que quedaron garantizados por la hipoteca constituída sobre la finca. Posteriormente el Sr. Roberto H. Hau y Schnabel adquirió por compra que hizo a la Sra. Ducord la finca urbana y por escritura otorgada ante el mismo Notario Sr. Sabater el 13 de marzo de 1941 hizo constar que era dueño de dicha finca hipotecada, la que estaba inscrita a su nombre en el registro de la propiedad, y que siendo el tenedor de los cinco pagarés antes mencionados, se habían confundido los derechos de acreedor y dueño de la referida finca y en su consecuencia consentía en que se cancelara totalmente la hipoteca por capital, intereses y costas que garantizaban los pagarés y así lo solicitó al efecto del Registrador de la Propiedad de Mayagüez, haciendo constar para ello lo siguiente:

"y para que pueda llevarse a cabo dicha cancelación, es su voluntad y consiente EN QUE SE INUTILICEN DICHOS CINCO PARARÉS Y AL EFECTO, yo, el Notario, PROCEDO A INUTILIZARLOS Y LOS INUTILIZO TALADRANDO SUS FIRMAS Y PONIENDO SOBRE LA FAZ DE CADA UNO DE ELLOS LA PALABRA 'CANCELADO' CON LA FECHA DE ESTA ESCRITURA, y mi firma, signo, rúbrica y sello notarial, quedando de este modo sin valor ni efecto dichos cinco pagarés y liberada de la hipoteca relacionada la finca hipotecada y descrita en el párrafo primero de esta escritura."

Presentada dicha escritura al Registrador de la Propiedad de Mayagüez denegó su inscripción basado en una nota que dice así:

"DENEGADA LA CANCELACIÓN que comprende este documento, por observarse, que la hipoteca que pretende cancelarse está representada por pagarés a la orden de Arturo Hau y Salguero, y que según se desprende de la escritura número 165 otorgada en Mayagüez, a vein-

tisiete de diciembre de 1937, ante el Notario José Sabater y García, que se tiene a la vista, dicho crédito hipotecario pertenece en común y proindiviso a la señora Therese A. Schnabel, y a sus cuatro hijos Arturo Robert Henry, Alexander Schnabel, Robert Heinrich y Gladys Therese Hau Schnabel, como herederos de Arturo Hau y Salguero y cesionarios de Carmen María y Zoraida Agustina Hau y Ruiz, sin que conste que los referidos pagarés hayan sido endosados, transferidos o negociados en forma alguna a favor de Robert H. Hau y Schnabel, constituyendo a éste como único cesionario y tenedor legal de los mismos, tomándose en su lugar la correspondiente anotación preventiva por el término legal al folio 58 vuelto del tomo 205 de Mayagüez, finca número 7193 nota al margen inscripción segunda. Los pagarés representativos de la deuda se tuvieron a la vista. Mayagüez, marzo 27, 1941.''

■■ El registrador recurrido en su alegato sostiene que hasta que no se le demuestre que los demás herederos de don Arturo Hau y Salguero han endosado los pagarés al recurrente o que se le han adjudicado en la partición de la herencia no puede éste cancelarlos. El artículo 82 de la Ley Hipotecaria, tal y como fué enmendado por la ley de 7 de julio de 1923 (leyes de 1923, pág. 219) en lo pertinente, dispone:

"Las inscripciones hechas para responder de cantidades representadas *por títulos al portador o trasmisibles por endoso,* se cancelarán presentándose la escritura otorgada *por los que hayan cobrado los créditos,* en la cual debe constar haberse inutilizado en el acto de su otorgamiento, *los títulos endosables o al portador.''*

Sostiene el recurrente que el único requisito que exige la ley es que se haya hecho constar en la escritura en el acto de su otorgamiento ''haberse inutilizado los títulos endosables o al portador'' y que en la escritura otorgada en este caso se hizo constar por el Notario Sr. Sabater que había inutilizado los cinco pagarés, taladrando sus firmas y poniendo la palabra ''cancelado'' sobre cada uno de ellos, y cita un párrafo de la resolución dictada por la Dirección General de los Registros el 23 de junio de 1888, tomada de Galindo y

Escosura en sus Comentarios a la Legislación Hipotecaria, tomo tercero, página 51, en relación con el artículo 82, supra, que dice así:

"Por otra de 23 de jun. 1888, se decidió que constituída hipoteca para garantir pagarés transmisibles por endoso, procedía su cancelación, mediante escritura en que constaba el consentimiento *del último poseedor de los pagarés,* y que éstos fueron inutilizados en el acto de su otorgamiento." (Itálicas nuestras.)

Sin embargo, hemos leído la ameritada resolución en su totalidad y de sus hechos aparece que el caso fué uno en el que los pagarés a la orden de que se trataba fueron debidamente endosados a favor de la persona que solicitó la cancelación de la hipoteca en el registro. Copiamos de dicha resolución:

"Resultando que por escritura de 23 de Mayo de 1885, Don Miguel Téllez de Sotomayor y D. Eduardo Palanca y Asensi vendieron a Don Manuel de Guzmán y Rivera un solar, designado con el núm. 3, segregado de un predio rústico denominado Huerta de Montero; y como parte del precio quedase aplazado, el comprador entregó a los vendedores cuatro pagarés, dos de ellos a la orden de D. Miguel Téllez y los otros dos a la del Sr. Palanca, y a su pago fué hipotecado el solar vendido:

"Resultando que enajenado éste primeramente a D. Enrique Rivas Casalá y después a D. José de la Huerta y Sánchez, por hallarse ya satisfecho el crédito hipotecario a que se ha aludido, reclamó el último se formalizase el título de su adquisición y al par se cancelase la hipoteca; a cuyo intento otorgóse en la ciudad de Málaga, a 30 de Julio de 1887, una escritura pública, por virtud de la que D. Eduardo Palanca, como tenedor de los cuatro pagarés, *dos de ellos por endoso que le hizo D. Miguel Téllez, dió por extinguida la obligación que aquéllos representaban y consintió en la cancelación de la hipoteca:*

"Resultando que presentado ese documento en el Registro de la propiedad de Málaga, no fué admitida la cancelación por no estar otorgada por las personas a favor de las que aparece inscrita la hipoteca, sin cuyo consentimiento no puede ser cancelada, conforme al artículo 82 de la Ley; no siendo por otra parte los pagarés a que el documento se refiere los títulos transmisibles por endoso de que hablan los artículos 153 y el citado 82 de la misma Ley.

"Resultando que D. José de la Huerta impugnó en la vía gubernativa la precedente calificación, fundado en que la obligación de que se trata es de las transmisibles a la orden, lo cual prueba la capacidad con que otorgó la cancelación D. Eduardo Palanca, que, dueño de dos pagarés, *adquirió los otros dos por endoso que le hizo el otro acreedor D. Miguel Téllez,* y lo gratuito de la apreciación del Registrador, que niega a estos documentos el carácter de títulos endosables:" (Itálicas nuestras.)

Y resolviendo el caso se dijo:

"Vistos los artículos 82 y 153 de la Ley Hipotecaria:

"Considerando que los documentos llamados a la orden *son transmisibles por endoso,* y es indudable que los cuatro pagarés entregados por D. Manuel de Guzmán y Rivera a los vendedores de la Huerta de Montero eran documentos de ese género:

"Considerando que la transmisión de los créditos endosables no requiere la intervención activa ni pasiva del deudor, *bastando para la cesión de ellos el simple endoso firmado por el acreedor o por persona legítimamente autorizada por él.*

"Considerando que por concurrir todas esas circunstancias *en el endoso hecho por D. Miguel Téllez a favor de D. Eduardo Palanca, adquirió éste la propiedad de los dos pagarés extendidos a la orden del primero:*

"Considerando que constituída la hipoteca de cuya cancelación se trata en garantía de esos pagarés, o sea de obligaciones transferibles por endoso, el precepto aplicable al caso es el del párrafo cuarto del artículo 153 de la Ley, según el que, el derecho hipotecario se entiende transferido con la obligación o con el título, sin necesidad de dar conocimiento al deudor ni de hacer la transferencia en el Registro:

"Considerando que si por todas estas razones *es innegable el perfecto derecho de dominio que asiste a D. Eduardo Palanca sobre los pagarés en cuestión, hay que reconocer su plena capacidad para consentir en la cancelación de la hipoteca, en que es único interesado;*

"Esta Dirección general ha acordado confirmar la providencia apelada." (Itálicas nuestras.)

De manera, que no se resolvió en dicho caso meramente que el último "poseedor" de los pagarés tenía derecho a solicitar la cancelación de acuerdo con el artículo 82 supra, sino que se demostró al registrador el perfecto derecho de

dominio que tenía dicho último poseedor y, por tanto, se le reconoció su plena capacidad para consentir en la cancelación de la hipoteca en que era "único interesado."

El registrador recurrido hace constar en su nota que de acuerdo con la escritura núm. 137 otorgada el 27 de diciembre de 1937, que tuvo a la vista, el crédito hipotecario pertenece en común y proindiviso a los herederos de don Arturo Hau y Salguero sin que conste que los pagarés hayan sido endosados, transferidos o negociados en forma alguna a favor del recurrente Robert H. Hau y Schnabel, constituyendo a éste como único cesionario y tenedor legal de los mismos. Somos de opinión que bajo esta situación de hechos tuvo razón el registrador al negarse a cancelar la hipoteca. Si el recurrente es el dueño de los pagarés por endoso, cesión o adjudicación que de ellos le hicieran los demás herederos muy fácil le es demostrarlo al registrador quien podrá proceder a la cancelación solicitada..

El caso de *Frontera* v. *Registrador,* II Sentencias del Tribunal Supremo, 709, citado por el recurrente, no le favorece. Allí se resolvió lo siguiente:

"Considerando: Respecto al primer motivo en que se funda la nota denegatoria del Registrador de la Propiedad de Mayagüez, o sea por aparecer inscrita la escritura hipotecaria a favor de persona distinta de aquella que presta su consentimiento para la cancelación, que si bien con arreglo al artículo 82 de la Ley Hipotecaria las inscripciones o anotaciones preventivas hechas en virtud de escritura pública, no se cancelarán sino por providencia ejecutoria contra la cual no se halle pendiente recurso de casación, o por otra escritura o documento auténtico en el cual exprese su consentimiento para la cancelación la persona a cuyo favor se hubiese hecho la inscripción o anotación, o su causa-habiente o representantes legítimos, este precepto no es aplicable cuando se trata de obligaciones *trasmisibles por endoso,* como lo son los pagarés a la orden, *pues en estos casos la propiedad del crédito hipotecario se trasmite por el endoso del pagaré sin necesidad de otorgar escritura de cesión,* ni de inscribirla en el Registro de la Propiedad, como lo establece el artículo 153 de la misma Ley Hipotecaria, bastando para la cancelación de la hipoteca en tales casos, como lo prescribe el mismo artículo 82 en su cuarto apartado,

la presentación de la carta de pago otorgada por los que hayan cobrado los créditos, en la cual se haga constar haberse inutilizado en el acto de su otorgamiento los títulos endosables, . . .'' (Itálicas nuestras.)

Se resolvió expresamente que ''la propiedad del crédito hipotecario se trasmite por el endoso'' y cuando esto aparece de la escritura procede la cancelación. Tampoco el caso de *Nichols* v. *Registrador de San Juan,* 31 D.P.R. 298 tiene el alcance que quiere darle el recurrente.

No se trata en el caso de autos de pagarés al portador sino de pagarés a la orden que son obligaciones transferibles por endoso, *Frontera* v. *Registrador,* supra, y en el caso de *Sanders Philippi & Cía.* v. *Delgado,* 27 D.P.R. 545, se resolvió que ''el endoso propiamente dicho es el acto por el que se trasmite *la propiedad* de la letra de cambio y **demás** documentos expedidos a la orden''. Y en el reciente caso de *Caguas Co., Inc.* v. *Mombille,* 58 D.P.R. 300, 307 se resolvió que en una demanda en cobro de un pagaré expedido a la orden no era necesario alegar que la demandante era la dueña del pagaré, pues bastaba con que se alegara que el pagaré era uno a la·orden y que la demandante era la tenedora del mismo *''por endoso y entrega''.*

En el caso de autos ninguno de los herederos separadamente tiene más derecho que cualquiera otro de la Sucesión de don Arturo Hau Salguero sobre los pagarés mientras no se pruebe un endoso o adjudicación legal de los mismos.

*Se confirma la nota recurrida.*