RAÚL NAVEDO TORRES y ANTONIA CLAUDIO GONZÁLEZ, recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE CAGUAS, recurrido.

*Número:* G–62–16  *Resuelto:* 19 de marzo de 1963

*Gregorio Ramos Rivera,* abogado de los recurrentes; la Registradora recurrida compareció por escrito.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

El 29 de enero de 1962 los consortes Raúl Navedo Torres y Antonia Claudio González suscribieron ante notario un pagaré a la orden de la institución First Federal Savings & Loan Association of Puerto Rico, por la suma principal de $3,697.20 y sus intereses al 4.65% anual, obligándose a satisfacer el principal en sesenta plazos mensuales consecutivos, de $61.62 cada uno, a vencerse el primero en el primer día de marzo de 1962 y el último el primero de febrero de 1967. Para la seguridad de su pago, mediante escritura pública otorgada en la misma fecha del pagaré, constituyeron hipoteca sobre una propiedad urbana de ellos, radicada en el municipio de Caguas. El gravamen fue inscrito en el Registro de la Propiedad y el pagaré entregado a la mencionada institución.

El 11 de junio de 1962, es decir, antes de vencerse el sexto plazo, los esposos Navedo Claudio otorgaron ante el notario Gregorio Ramos Rivera una escritura pública, bajo el Núm. 43, en la cual, luego de relacionar el otorgamiento por ellos del pagaré aludido y la constitución de su garantía hipotecaria, declararon e hicieron constar:

"... que el relacionado pagaré a favor de la First Federal Savings and Loan Association of Puerto Rico está en su poder por haber pagado el valor de la suma principal y de los intereses a la Asociación acreedora que les devolvió la obligación cancelada por medio de un sello fijado sobre la faz del pagaré y sobre las firmas que lee así: 'CANCELLED—5/28/62—First Federal Savings & Loan Ass'n of Puerto Rico' por lo que los comparecientes interesan cancelar y por la presente prestan su consentimiento expreso para que se cancele totalmente en el Registro de la Propiedad de Caguas, la hipoteca que garantiza dicho pagaré en cuanto a capital, intereses y crédito de costas en caso de un recurso judicial para su cobro, dejando la finca descrita libre de dicho gravamen y con el objeto de que pueda realizarse dicha cancelación, los comparecientes me exhiben en este acto el pagaré relacionado el que procedo a identificar debidamente comprobando que en efecto ha sido cancelado por la acreedora e inutilizándolo aun más taladrando sus firmas para que quede sin valor ni efecto legal."

Días después, copia certificada de esa escritura pública Núm. 43, acompañada del original del pagaré, fue presentada al Registro de la Propiedad, Sección de Caguas, para la cancelación registral del gravamen.

El 19 de setiembre siguiente la Registradora denegó la cancelación solicitada por nota que, en lo pertinente, es como sigue:

"Con vista del pagaré cancelado, denegada la cancelación de hipoteca solicitada por este documento, por haberse observado que la hipoteca que se cancela está representada por un pagaré a favor de la First Federal Savings and Loan Association of Puerto Rico o a su orden, y que ni en el documento ni en el pagaré se expresa que dicha obligación haya sido endosada a favor de los deudores en el contrato de hipoteca, quienes

comparecen a cancelar, tomándose en su lugar anotación preventiva. . . ."

Recurrieron ante nos los esposos Navedo Claudio y como fundamento de su recurso exponen que la Registradora había cometido error "al exigir un endoso expreso del pagaré a favor de los deudores como requisito para inscribir la cancelación de la hipoteca. . . ."

Sostienen los recurrentes que "la nota que fijó la acreedora sobre la faz del pagaré y sobre las firmas constituye suficiente endoso junto con la entrega del pagaré a los deudores, para que el mismo pueda cancelarse en el Registro." Citan *The National City Bank* v. *Sucn. Echevarría*, 50 D.P.R. 865 (1937).

En contrario afirma la Registradora recurrida que ello no constituye un endoso eficaz y suficiente para trasmitir y cancelar la obligación hipotecaria a favor de los deudores hipotecantes, amparándose en *Hau* v. *Registrador*, 58 D.P.R. 805 (1941).

El pagaré tiene sobre su anverso dos impresiones de un sello de goma; una sin firma, pero la otra está firmada por el tesorero de la entidad acreedora y que dice así: "CANCELLED 5/28/62 First Federal Savings & Loan Ass'n of Puerto Rico—By: (fdo.) A. Hirsch", y aparece cubriendo parte de la firma del codeudor Raúl Navedo González. En la escritura de cancelación se copió la primera impresión no firmada por el funcionario A. Hirsch.

En lo pertinente, el último párrafo del Art. 82 de nuestra Ley Hipotecaria dispone que las inscripciones hechas para responder de cantidades representadas por títulos al portador o trasmisibles por endoso se cancelarán presentándose la escritura otorgada por los que hayan cobrado los créditos, en la cual debe constar haberse inutilizado en el acto de su otorgamiento, los títulos endosables o al portador. Pero en la práctica notarial puertorriqueña no es, por lo común, el acreedor que ha cobrado su crédito, el que otorga la escritura de cancelación de la garantía hipotecaria. Casi

siempre la otorga el deudor hipotecante, a quien, para esos fines, hace entrega al acreedor del documento justificativo de la obligación que se ha satisfecho.

■ Tratándose de un título al portador basta con su simple entrega al deudor para que se realice la trasmisión de su propiedad a éste. Pero cuando es a la orden, se necesita para su traspaso eficaz el endoso del tenedor completado con la entrega. (¹) El endoso es la forma específica, pero no la única, de transmisión de títulos a la orden. Es el medio ordinario que opera con mayor rapidez y economía las sustituciones sucesivas en el ejercicio del derecho que nace del crédito. (²)

■ Para que un endoso sea suficiente basta la sola firma del endosante puesta por el tenedor en el documento mismo o en un papel adherido al documento. (³)

■ Nuestro Código de Comercio, ed. de 1932, en sus Arts. 386 y 387 dispone, entre otras cosas, que el endoso puede ser especial o en blanco, restrictivo, calificado o condicional; que el endoso en blanco no menciona endosatario *"y el documento endosado de este modo es pagadero al portador y puede negociarse mediante entrega."*

■ El pagaré librado por los esposos Navedo Claudio tiene la constancia de haberse cancelado o extinguido, autorizada por la entidad propietaria y tenedora del mismo, a cuyo favor se expidió. El término inglés "CANCELLED", cancelado, no puede tener otra significación y consecuencia que no sea la de anular y hacer ineficaz el pagaré y declarar extinguida—por su pago según aparece de la escritura de cancelación cuya inscripción se denegó—la obligación que representaba. Esa constancia que evidencia obviamente la

---

(¹) Art. 383, Código de Comercio, ed. 1932.

(²) Cfr. *Ramos Hermanos, Sucrs.* v. *Muñoz,* 39 D.P.R. 242 (1929); Garrigues, *"Tratado de Derecho Mercantil,"* Madrid, 1955, t. II, pág. 118 y *"Curso de Derecho Mercantil,"* 2da. ed., Madrid, t. I, pág. 627.

(³) Art. 384, Código de Comercio; *Cortada* v. *De Jesús,* 51 D.P.R. 867, 871 (1937); *The National City Bank* v. *Sucn. Echevarría,* 50 D.P.R. 865, 869 (1937).

extinción del documento como título-valor negociable, debidamente fechado en 28 de mayo de 1962, y firmado por un funcionario de la entidad acreedora, y su entrega material a los esposos deudores, (⁴) a nuestro juicio constituye un endoso a favor de ellos eficaz y suficiente en Derecho, para los fines de la cancelación total de la garantía hipotecaria en el Registro de la Propiedad.

Por otra parte, una vez pagado el documento a su tenedor, su carácter negociable se había terminado y ninguna función podía desempeñar un endoso corriente. (⁵) Además, al considerarse la nota firmada y fechada como un endoso en blanco porque en ella no se menciona al endosatario, el documento era pagadero al portador con arreglo al citado Art. 387. De esa suerte, la facultad de los esposos portadores para cancelar la hipoteca y solicitar su extinción registral, era indiscutible. (⁶)

La doctrina del caso de *Hau* en que descansa la Registradora no es aplicable al presente. Allí se trató de cancelar una garantía hipotecaria constituida para garantizar el pago de cinco pagarés expedidos "a la orden del Sr. Hau Salguero", sin que se demostrara que los cinco pagarés habían sido endosados por éste o por sus herederos en forma alguna

---

(⁴) Los Arts. 1142 y 1143 de nuestro Código Civil dicen:

"La entrega del documento privado justificativo de un crédito, hecha voluntariamente por el acreedor al deudor, implica la renuncia de la acción que el primero tenía contra el segundo.

"Si para invalidar esta renuncia se pretendiere que es inoficiosa, el deudor y sus herederos podrán sostenerla probando que la entrega del documento se hizo en virtud del pago de la deuda.—Art. 1142.

"Siempre que el documento privado de donde resulte la deuda se hallare en poder del deudor, se presumirá que el acreedor lo entregó voluntariamente, a no ser que se pruebe lo contrario."—Art. 1143.

(⁵) Dispone el Art. 400 del Código de Comercio, ed. 1932:

"Un documento que es negociable en su origen continúa siéndolo, hasta que sea endosado restrictivamente o sea solventado mediante pago o de otro modo."

Queda cancelado un documento negociable mediante "el pago hecho en debido curso por el deudor principal." Art. 472(1) Código de Comercio.

(⁶) *Cfr. Dominici* v. *Registrador*, 59 D.P.R. 764, 767 (1942).

a favor del entonces dueño de la finca que los tenía en su poder, ni que él los hubiera adquirido por cesión, adjudicación, transferencia o negociación alguna.

*Deberá revocarse la nota denegatoria recurrida y practicarse la cancelación total de la hipoteca en el Registro.*