Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| LUNA RESIDENTIAL II, LLC<br><br>Apelado<br><br>v.<br><br>SUCESIONES DE PERFECTO VICENTE MASSÓ Y CARMEN VÉLEZ REYES, COMPUESTAS POR SUS HIJOS CARMEN MARÍA VICENTE VÉLEZ Y HÉCTOR LUIS VICENTE VÉLEZ; FULANO DE TAL Y MENGANA MÁS CUAL COMO HEREDEROS DESCONOCIDOS; CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES (CRIM)<br><br>Apelantes | TA2025AP00041 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Civil número: GB2019CV00099 cons. GB2023CV00117<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidente, el juez Adames Soto, la juez Aldebol Mora y el juez Sánchez Báez.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 11 de septiembre de 2025.

Comparece la parte apelante, Carmen M. Vicente Vélez, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Guaynabo, el 1 de mayo de 2025, notificada el 5 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró Ha Lugar la solicitud de sentencia sumaria promovida por la parte apelada, Luna Residential II, LLC.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado. Veamos.

## I

El 29 de julio de 2024, Luna Residential II, LLC (Luna o apelado) incoó una *Segunda Demanda Enmendada* sobre cobro de dinero y ejecución de hipoteca en contra de las Sucesiones de

Perfecto Vicente Massó y Carmen Vélez Reyes (deudores obligacionales), compuestas por sus hijos Carmen M. Vicente Vélez (Vicente Vélez o apelante) y Héctor L. Vicente Vélez (Sucesión); y el Centro de Recaudación de Ingresos Municipales (CRIM).[1] Alegó que los deudores obligacionales suscribieron un pagaré hipotecario a favor de Santander Mortgage Corporation, mediante el cual se les concedió un préstamo bajo las siguientes condiciones:

| Comienzo | 1 de julio de 1999 |
|----------|--------------------|
| Vencimiento | 1 de junio de 2029 |
| Principal | $159,300.00 |
| Interés | 7.50% |
| Pago | $1,113.85 |

Asimismo, arguyó que también se pactó el pago de una suma equivalente al diez por ciento (10%) del principal original, para costas, gastos y honorarios de abogado(a) en caso de reclamación por la vía judicial. Según adujo, los deudores obligacionales otorgaron la Escritura Núm. 77, mediante la cual se constituyó una hipoteca sobre el inmueble sito en Guaynabo, en garantía del referido préstamo. Planteó que los deudores obligacionales se habían comprometido al pago de contribuciones, primas de seguro hipotecario y riesgo, así como de otras cantidades pactadas en la escritura de hipoteca. Apercibió a la Sucesión que debían aceptar o rechazar su participación en el caudal hereditario de los causantes.

Por otro lado, Luna sostuvo en la acción de epígrafe que era la entidad con derecho a exigir el cumplimiento del instrumento por ser su tenedor. A su vez, adujo que los deudores obligacionales habían incumplido con los términos del préstamo que les fue concedido, por haber dejado de efectuar los pagos acordados, por lo que la deuda era una líquida, vencida y exigible. Planteó que los

---

[1] Entrada Núm. 124 del Caso Núm. GB2019CV00099 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

esfuerzos realizados para lograr el cumplimiento de la obligación fueron infructuosos, por lo que procedía el cobro de lo adeudado por la vía judicial, junto con la ejecución de la garantía hipotecaria constituida. Indicó que, al 26 de julio de 2024, se adeudaba lo siguiente: $98,436.65 de principal; intereses al 7.50%, los cuales se acumulaban mensualmente desde el 1 de septiembre de 2018 hasta el saldo total de la deuda; $1,791.77 por concepto de cargos por mora, los cuales continuaban acumulándose hasta el saldo de la deuda; $306.94 por concepto de *escrow*, los cuales continuaban acumulándose hasta el saldo de la deuda, más la suma de $15,930.00 por concepto de honorarios de abogado(a). En virtud de lo anterior, solicitó la ejecución de la hipoteca mediante la venta judicial del inmueble antes descrito; el pago de costas, gastos y honorarios de abogado(a) y una suma hasta el monto de la reclamación.

Por su parte, en lo aquí atinente, Vicente Vélez presentó su alegación responsiva.[2] En esencia, negó los planteamientos esbozados en su contra y alegó que las cuantías reclamadas no eran líquidas. A su vez, instó una *Demanda de Coparte* en contra de Héctor Vicente Vélez. Arguyó que, después del fallecimiento de su padre Perfecto Vicente Massó, la Sucesión entró en un acuerdo extrajudicial para la liquidación de la herencia del causante. Planteó que, entre ellos, acordaron que se quedaría con la propiedad en controversia. Afirmó que había otro bien hereditario cuyo producto se podía utilizar para reinstalar el préstamo y, de esa forma, se preservarían los bienes hereditarios y evitarían perjuicios adicionales al caudal hereditario. Según adujo, permanecía en una comunidad de bienes con su hermano en cuanto a los bienes habidos en el caudal hereditario. Sostuvo que no deseaba

---

[2] Entrada Núm. 142 del Caso Núm. GB2019CV00099 en el SUMAC.

permanecer en indivisión, por lo que solicitó que se liquidara la comunidad hereditaria. Además, en lo pertinente, solicitó que los otros bienes del caudal se utilizaran para cubrir lo adeudado de la hipoteca.

Luego de varios trámites procesales, el 20 de febrero de 2025, Luna instó una *Moción Solicitando [la] Continuación de los Procedimientos y en Solicitud de Sentencia.*[3] En síntesis, reiteró que la deuda era líquida, podía cuantificarse y no existía controversia alguna respecto a su cuantía, por lo que era exigible. Sostuvo que la Sucesión incumplió con la obligación de repagar el préstamo hipotecario en cuestión, siendo el legítimo tenedor del pagaré que evidenciaba la acreencia y las garantías que aseguraban la misma. Especificó que los deudores obligacionales habían dejado de efectuar los pagos y abonos acordados según los documentos suscritos, por lo que incumplieron con los términos de las obligaciones antes mencionadas. Planteó que, debido a ello, la hipoteca podía ser ejecutada y el inmueble que servía como garantía podía ser vendido mediante pública subasta para lograr el cobro total de las sumas adeudadas. En vista de ello, y por entender que no existía controversia en cuanto a la responsabilidad de la Sucesión por la obligación en cuestión y los incumplimientos de esta, procedía declarar Ha Lugar la solicitud de sentencia sumaria y ordenar la venta en pública subasta del inmueble gravado por la hipoteca objeto de la acción de epígrafe.

Posteriormente, Vicente Vélez solicitó tres (3) prórrogas al foro sentenciador para presentar su oposición a la solicitud de sentencia

---

[3] Entrada Núm. 144 del Caso Núm. GB2019CV00099 en el SUMAC. Luna acompañó su moción con los siguientes documentos: (1) copia del *Pagaré* endosado, con fecha del 21 de mayo de 1999; (2) copia de la Escritura Núm. 77 sobre hipoteca, suscrita el 21 de mayo de 1999; (3) copia de la *Certificación de Propiedad Inmueble*, con fecha del 28 de febrero de 2024; (4) copia de la *Declaración Jurada*, suscrita por Rafael Hernández Miranda el 17 de diciembre de 2024; (5) copia de la carta de aceleración, con fecha del 31 de octubre de 2018.

sumaria, las cuales fueron concedidas.[4] Sin embargo, no compareció.

Evaluado el petitorio sumario sin oposición, el 1 de mayo de 2025, notificada el 5 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa, mediante la cual declaró Ha Lugar la solicitud de sentencia sumaria promovida por Luna.[5] En particular, el foro primario esbozó las siguientes determinaciones de hechos:

El 21 de mayo de 1999, los deudores obligacionales Vicente-Vélez suscribieron [un] pagaré hipotecario a favor de Santander Mortgage Corporation, mediante el cual se les concedió [un] préstamo bajo los siguientes términos:

| Comienzo | 1 de julio de 1999 |
|---|---|
| Vencimiento | 1 de junio de 2029 |
| Principal | $159,300.00 |
| Interés | 7.50% |
| Pago | $1,113.85 |

Se pactó[,] además, el pago de una suma equivalente al diez por ciento (10%) del principal original, para costas, gastos y honorarios de abogado en caso de reclamación por la vía judicial. Obra en el expediente del Tribunal [una] copia del pagaré hipotecario, el cual fue suscrito por los deudores obligacionales Perfecto Vicente Massó y Carmen Vélez Reyes, ante el notario Baldomero A. Collazo Torres, declaración número 1,692.

En garantía del préstamo, los deudores otorgaron la escritura número 77, en la misma fecha y ante igual notario, mediante la cual se constituyó [una] hipoteca sobre el inmueble de su propiedad sito en el lote número 1, bloque H, Urbanización Parque de Villa Caparra, Guaynabo. Se estableció como tipo mínimo en caso de subasta la suma de $159,300.00.

La propiedad inmueble que garantiza el préstamo hipotecario objeto de la presente acción se describe como sigue:

URBANA: Solar radicado en la Urbanización Parque de Villa Caparra, situada en el Barrio Juan Domingo del término municipal de Guaynabo, Puerto

---

[4] Entradas Núm. 147 y 149-153 del Caso Núm. GB2019CV00099 en el SUMAC.
[5] Entrada Núm. 154 del Caso Núm. GB2019CV00099 en el SUMAC.

Rico, que se describe en el plano de inscripción de la urbanización con el número, área y colindancias que se relacionan a continuación: Número de la propiedad: Solar H1. Área de la propiedad: 182.62 metros cuadrados. En lindes por el NORTE, en 10.04 metros lineales con la Sucesión Sevilla; por el SUR, en 10.04 metros lineales con la Calle A de esta urbanización; por el ESTE, en 18.20 metros lineales con el solar número H-2 de esta urbanización; y por el OESTE, en 18.18 metros lineales con los solares número G-6 de esta urbanización. Esta propiedad inmueble también tiene una participación en común proindiviso de una cincuentava parte en las áreas comunes de esta urbanización. El inmueble antes descrito contiene una casa de vivienda de hormigón y bloques de hormigón con marquesina, habitaciones y otras facilidades.

Consta inscrita al folio 110 del tomo 957 de Guaynabo, finca 34,500, Registro de la Propiedad de Guaynabo.

La parte demandada incumplió [con] los términos del préstamo que les fue concedido *[sic]*, por haber dejado de efectuar los pagos acordados, por lo que la parte demandante optó por declarar vencida y exigible la totalidad del préstamo.

La parte demandante acreditó a este Tribunal que es la actual tenedora de buena fe del pagaré hipotecario antes relacionado y la entidad con derecho a exigir su cumplimiento.

La prueba documental acompañada por la demandante, permite acreditar que la parte demandada adeuda las siguientes sumas: $98,436.65 de principal; $46,749.05 de intereses, los cuales se acumulan mensualmente a razón del 7.50% desde el 1 de septiembre de 2018 hasta el saldo total de la deuda; $1,791.77 por concepto de cargos por mora; $306.94 por concepto de adelantos por deficiencia en la cuenta de reserva; $170.00 de cargos por fondos insuficientes (NSF); $2,329.00 por concepto de adelantos recobrables realizados conforme a los términos y condiciones del pagaré y la escritura de hipoteca; más la suma de $15,930.00 por concepto de honorarios de abogado.

Cónsono con las determinaciones de hechos incontrovertidos, el foro *a quo* declaró Ha Lugar la *Segunda Demanda Enmendada* y desestimó la demanda contra coparte, sin perjuicio de que se inste una acción independiente de división de comunidad hereditaria. En consecuencia, ordenó a la Sucesión a pagar a Luna las siguientes

sumas: $98,436.65 de principal; $46,749.05 de intereses, los cuales se acumulaban mensualmente a razón del 7.50% desde el 1 de septiembre de 2018 hasta el saldo total de la deuda; $1,791.77 por concepto de cargos por mora; $306.94 por concepto de adelantos por deficiencia en la cuenta de reserva; $170.00 de cargos por fondos insuficientes (NSF); $2,329.00 por concepto de adelantos recobrables realizados conforme a los términos y condiciones del pagaré y la escritura de hipoteca; $15,930.00 por concepto de honorarios de abogado(a).

En desacuerdo, el 20 de mayo de 2025, Vicente Vélez presentó una *Moción de Reconsideración.*[6] En esencia, alegó que la deuda no era líquida, pues las cuantías concedidas no se ajustaban a las normas jurisprudenciales. Especificó que Luna no probó la cuantía de $2,329.00 por concepto de adelantos recobrables. Argumentó que la jurisprudencia requería especificidad para dicha partida y Luna no probó mediante prueba documental cuáles adelantos hizo. Asimismo, planteó que los otros cargos, recargos, penalidades y créditos accesorios, como el pago de prima de seguro contra riesgos, contribuciones y/o seguro hipotecario eran partidas improcedentes en derecho puesto que no cumplían con el crisol jurisprudencial. Enfatizó que el peso de la prueba de evidenciar que incurrió en las partidas indicadas recaía sobre Luna, quien no había logrado probarlo por preponderancia de la prueba, por lo que el tribunal estaba impedido de conceder una partida por gastos razonables.

Por otro lado, Vicente Vélez adujo en su solicitud de reconsideración que, de los documentos anejados a la sentencia sumaria, no había alguno que acreditara que el banco cumplió con la obligación de enviar las notificaciones al deudor por correo certificado, según establecido en la escritura de hipoteca.

---

[6] Entrada Núm. 156 del Caso Núm. GB2019CV00099 en el SUMAC.

Particularizó que lo anterior se trataba de un hecho esencial sobre el cual Luna debía aportar prueba documental para certificar el cumplimiento con la condición precedente y los términos del acuerdo habido entre las partes sobre la notificación por correo certificado. Reiteró que Luna no probó sus planteamientos por preponderancia de la prueba y, consecuentemente, era insuficiente para la concesión del remedio sumario solicitado. En vista de ello, solicitó que el tribunal de instancia reconsiderara su determinación, revocara la sentencia sumaria dictada y ordenara la celebración de un juicio para que Luna acredite el cumplimiento con sus partes de las obligaciones.

Examinada la solicitud de reconsideración, el 21 de mayo de 2025, notificada al siguiente día, el foro de origen la declaró No Ha Lugar mediante *Resolución.*[7]

Inconforme, el 23 de junio de 2025, la parte apelante instó el recurso de epígrafe y señaló los siguientes errores:

> Erró el foro *a quo* al conceder una partida de adelantos recobrables en la sentencia cuando el demandante no aportó prueba de qué son los mismos[.]

> Erró el foro *a quo* al conceder el remedio sumario cuando el demandante no aportó prueba de que cumplió con su parte de la obligación bilateral.

En cumplimiento con nuestra *Resolución* del 30 de julio de 2025, la parte apelada compareció mediante *Alegato en Oposición a Recurso de Apelación,* el 2 de septiembre del mismo año.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo

---

[7] Entrada Núm. 157 del Caso Núm. GB2019CV00099 en el SUMAC.

para asegurar la solución justa, rápida y económica de un caso. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros*, 2025 TSPR 78, resuelto el 5 de agosto de 2025; *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los

asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición,

según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros*, 213 DPR 80 (2024); *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, 2024 TSPR 62, resuelto el 17 de junio de 2024; *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*,

185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media*

*of Puerto Rico, Inc. y otro*, 2025 TSPR 1, resuelto el 7 de enero de 2025; *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, supra; *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Serrano Picón v. Multinational Life Ins.*, supra; *González Meléndez v. Mun. San Juan et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro,* supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.*, supra.

**B**

En una acción de cobro de dinero, la parte demandante únicamente puede reclamar, por vía judicial, aquellas deudas que sean vencidas, líquidas y exigibles. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021). Respecto a ello, el Tribunal Supremo de Puerto Rico expresó que:

> El vocablo "líquida" en relación con una cuenta, en lenguaje corriente significa el saldo "o residuo de cuantía cierta que resulta de la comparación del cargo con la data". Y la voz "exigible" refiriéndose a una obligación, significa que puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

En ese sentido, la deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada". *Ramos y otros v. Colón y otros,* 153 DPR 534, 546 (2001), citando a M.A. Del Arco Torres y

M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168 y a *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965). Por otro lado, la deuda es "exigible" cuando la obligación no está sujeta a una causa de nulidad y puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, supra. Sobre ese particular, nuestro Tribunal Supremo determinó en *RMCA v. Mayol Bianchi*, supra, págs. 108-109, lo siguiente:

> La deuda es líquida por ser cierta y determinada, y es exigible porque puede demandarse su cumplimiento. Así que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha *sido aceptado como correcto por el deudor y que está vencido*". (Citas omitidas).

Por otro lado, la parte que exige el cumplimiento de una obligación es a quien le corresponde probar su existencia. *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711, 719 (2000); *H.R. Stationery, Inc. v. E.L.A.*, 119 DPR 129, 134 (1987). Lo anterior es cónsono con la Regla 110 de Evidencia de Puerto Rico de 2009, 32 LPRA Ap. VI, R. 110, pues el peso de la prueba recae sobre la parte que resultaría vencida en caso de no presentarse prueba alguna.

**C**

La Sección 2-104 de la *Ley de Transacciones Comerciales*, Ley Núm. 208-1995, según enmendada, 19 LPRA sec. 504 (Ley Núm. 208-1995), define un instrumento negociable como:

> [U]na promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo:
>
> (1) Es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;
> (2) es pagadero a la presentación o en una fecha específica, y
> (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, pero la promesa u orden puede contener:
>> (a) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago,

(b) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o

(c) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor.

Ahora bien, únicamente el tenedor de un instrumento negociable está legitimado *ad causam* para demandar basándose en el mismo. *Papex Intern. Brokers Ltd. v. Chase Manhattan Bank, N.A.*, 821 F.2d 883 (1987). Esto es así porque al portador le cobija la presunción legal de que el pagaré es válido y de que fue otorgado por causa justa y onerosa. A partir de este principio, no puede exigirse al portador que alegue y presente prueba para establecer que es dueño del Pagaré; tampoco de que es tenedor de buena fe ni cuál es la causa onerosa específica que permitió su adquisición. La sola posesión equivale al título y le da al portador legitimación para presentarlo al cobro, porque advino a la vida del derecho como documento negociable con valor. *Liechty v. Descartes Saurí*, 109 DPR 496, 502 (1980); *Lozada Merced v. Registrador*, 100 DPR 99, 104 (1971); *Navedo Torres v. Registrador*, 87 DPR 794, 798 (1963).

En cuanto al derecho a exigir el cumplimiento de un instrumento negociable, como un pagaré, la Sección 2-301 de la Ley Núm. 208-1995, 19 LPRA sec. 601, dispone que la persona con derecho a exigir el cumplimiento de un instrumento significa:

(1) el tenedor del instrumento, (2) una persona que no es tenedor pero está en posesión del instrumento y tiene los derechos de un tenedor, o (3) una persona que no está en posesión del instrumento pero tiene derecho de exigir el cumplimiento del instrumento de acuerdo con las disposiciones de las secs. 609 y 668(d) de este título. Una persona puede ser una persona con derecho a exigir el cumplimiento del instrumento[,] aunque la persona no sea el dueño del instrumento o lo posea indebidamente.

De otro lado, uno de los mecanismos procesales disponibles a un acreedor hipotecario para hacer efectivo su derecho de crédito contra el deudor es el procedimiento de ejecución de hipoteca por la

vía ordinaria, regido por la Regla 51.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 51.3, así como también por las disposiciones aplicables del Artículo 94 de la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, Ley Núm. 210-2015, 30 LPRA sec. 6131. *Atanacia Corp. v. J.M. Saldaña, Inc.*, 133 DPR 284, 292 (1993). El acreedor puede, además, optar por incoar una acción en ejecución de hipoteca por la vía sumaria o una acción ordinaria en cobro de dinero, con embargo de la finca en aseguramiento de la sentencia. *Íd.* Cabe destacar que la acción de ejecución de hipoteca por la vía ordinaria es una de naturaleza mixta, pues existe una reclamación real y una reclamación personal. *Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

### III

La parte apelante plantea en su primer señalamiento de error que el Tribunal de Primera Instancia incidió al conceder una partida de adelantos recobrables en la sentencia cuando la parte apelada no aportó prueba sobre ello. Como segundo y último señalamiento de error, sostiene que el foro primario erró al conceder el remedio sumario cuando la parte apelada no aportó prueba de que cumplió con su parte de la obligación bilateral.

Hemos examinado cuidadosamente *de novo* el trámite procesal, el expediente ante nos, los escritos de las partes, así como la normativa aplicable y concluimos que el Tribunal de Primera Instancia no erró en su determinación. Nos explicamos.

Luego de evaluar la totalidad del expediente ante nos, colegimos que no existen controversias sobre hechos medulares que impidan la solución de la presente causa por la vía sumaria. Contrario a lo propuesto por la parte apelante, la parte apelada respaldó con prueba documental lo planteado en su petitorio

sumario. En particular, la apelante arguye que la parte apelada no probó que se adeudaba $2,329.00 por concepto de adelantos recobrables. Sin embargo, dicha suma surge expresamente de la *Declaración Jurada* suscrita por Rafael Hernández Miranda el 17 de diciembre de 2024, adjunta a la solicitud de sentencia sumaria, lo cual no fue controvertido por la apelante. Asimismo, la parte apelante, en ningún momento, controvirtió a través de evidencia fehaciente que lo expuesto por Luna en la solicitud de sentencia sumaria careciera de mérito. Conforme a lo resuelto por el Tribunal de Primera Instancia, y según se desprende de la documentación ante nos, la deuda en cuestión estaba vencida, líquida y exigible. Por tanto, procedía condenar a la Sucesión al pago de lo adeudado a favor de Luna. En vista de ello, no se cometieron los errores señalados.

En virtud de lo anterior, colegimos que el Tribunal de Primera Instancia no erró al emitir la *Sentencia* declarando Ha Lugar la solicitud de sentencia sumaria promovida por la parte apelada. En fin, al evaluar concienzuda y ponderadamente *de novo* los eventos procesales al palio de la normativa jurídica antes esbozada, coincidimos con la determinación del foro apelado.

**IV**

Por los fundamentos que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones